Reginald Wayne
**McWILLIAMS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–85–0809–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 16, 1986.
Rehearing Denied Nov. 13, 1986.

Charles F. Baird, Michael B. Charlton, Houston, for appellant.

John B. Holmes, Jr., Harris Co. Dist. Atty., William J. Delmore, III, Caprice Cooper, Harris Co. Asst. Dist. Attys., Houston, for appellee.

Before LEVY, HOYT and DUGGAN, JJ.

## OPINION

DUGGAN, Justice.

Following a non-jury trial, appellant was convicted of the third degree felony offense of escape. Tex.Penal Code Ann. sec. 38.07(c)(2) (Vernon 1974). His punishment, enhanced by proof of a prior felony conviction, was assessed at six years confinement. He urges two points of error on appeal.

On November 20, 1984, appellant was convicted of burglary of a habitation and sentenced to five years confinement in the Texas Department of Corrections. Six months later, on May 17, 1985, he was moved under pre-parole transfer to a halfway house in Houston, Texas, pursuant to Tex.Rev.Civ.Stat.Ann. art. 6166x–4 (Vernon 1986). Evidence showed that appellant was informed both orally and in writing that the halfway house was "designated as a unit of TDC," and that any unauthorized departure by him prior to his release on parole would subject him to prosecution for the offense of escape.

The night manager of Texas House testified that he found appellant "in an intoxicated state" on the night of June 10, 1985; that appellant refused to submit to a breath or urinalysis test; and that he was told that a hearing on the matter would be conducted in the morning. Further testimony showed that later during the same night, appellant was located on a fire escape outside the building and was taken back to his room; that he was seen running from the halfway house at about 7:30 a.m. on June 11th; that he had not been granted permission to leave; and that he was arrested at his girlfriend's house later that morning.

By his first point of error, appellant asserts that the trial court erred in assessing punishment against him as an enhanced offender in that the offense alleged for enhancement was unavailable for that purpose.

Appellant urges in argument that his prior burglary conviction, for which he was confined at the time the present charge arose, may not be used both to make his escape a felony and to enhance his punishment for its commission. As authority, he relies on *Ramirez v. State*, 527 S.W.2d 542 (Tex.Crim.App.1975), which held that a prior conviction, alleged as the basis for a charge of felon in possession of a firearm, may not also be used to enhance punishment for the latter conviction. *Ramirez* applied the rule enunciated in *Garcia v. State*, 169 Tex.Cr.R. 487, 381, 335 S.W.2d 381 (Tex.Crim.App.1960) (op. on reh'g), that "a prior conviction is not available to enhance punishment for an offense of which

it is an essential element." *Id.* at 383. Subsequent cases applying the rule have vacated enhanced punishment that was assessed in situations where the prior conviction alleged for enhancement was also alleged as an element of the primary offense, and was found to constitute an "essential element" of the primary offense.

In *Gearing v. State,* 685 S.W.2d 339, 343 (Tex.App.—Houston [14th Dist.] 1983), aff'd, 685 S.W.2d 326 (Tex.Crim.App.1985), one of two convictions alleged for enhancement was held to be improperly alleged because the same cause number was alleged and proved as an element of the primary offense, possession of a firearm by a felon. Punishment as an habitual offender, originally assessed by the trial court, was set aside, and the cause was remanded for the trial court's correct assessment of punishment within diminished range. *See, also Kincheloe v. State,* 553 S.W.2d 364 (Tex.Crim.App.1977).

Upon analysis, however, we find that appellant's cited authorities are distinguishable from the situation presented by the felony escape statute, sec. 38.07(c)(2), and that appellant's prior conviction is not such an "essential element" of the primary offense of felony escape as to bar its use for enhancement paragraph purposes.

Texas Penal Code Ann. sec. 38.07 (Vernon 1974), in effect at the time of the alleged offense and prior to the amendment effective September 1, 1985, reads in pertinent part:

(a) [A] person arrested for, charged with, or convicted of an offense commits an offense if he escapes from custody.

\* \* \* \* \* \*

(c) an offense under this section is a felony in the third degree if the actor:

(1) is under arrest for, charged with, or convicted of a felony;

or

(2) is confined in a penal institution.

Thus, subsection (a) defines the offense of escape generally; subsection (b), not quoted above, establishes escape as a Class A misdemeanor when a person escapes from custody after having been arrested for, charged with, or convicted of a misdemeanor. Then, subsection (c)

makes one guilty of a third degree felony if he (1) escapes from custody after having been arrested for, charged with, or convicted of *a felony* or (2) escapes from a penal institution after having been arrested for, charged with, or convicted of any offense, whether it be a felony or a misdemeanor....

*Ex parte Abbey,* 574 S.W.2d 104, 106 (Tex. Crim.App.1978) (emphasis in original).

The indictment alleged that appellant: having been arrested and confined from [sic] the offense of burglary, [did] intentionally and knowingly escape from his confinement in The Texas House.

It is further presented that in Harris County, Texas, Reginald Wayne McWilliams, hereafter styled the Defendant, heretofore, on or about June 1985, did then and there unlawfully having been convicted of Burglary of a Habitation with intent to commit theft, intentionally and knowingly escape from his confinement in the Texas House, a place designated by law to [sic] confinement of persons arrested for, charged with and convicted of offenses.

Before the commission of the offense alleged above on November 20, 1984, in Cause No. 413705, in the 262nd District Court of Harris County, Texas, the Defendant was convicted of the felony of burglary of a habitation with intent to commit theft.

A comparison of the indictment with sec. 38.07 of the Penal Code shows the intention of the indictment's draftsman to charge, in the first primary offense paragraph, the offense of felony escape under sec. 38.07(c)(1), i.e., escape from custody after arrest (and confinement) for the felony offense of burglary.

The intention apparent in the second primary offense paragraph is to charge felony escape under sec. 38.07(c)(2), i.e., escape from a penal institution after having been arrested for, charged with, or convicted of

any offense. While the term "penal institution" is not used in the second primary offense paragraph, that paragraph's wording describes "Texas House" in virtually the precise words of Tex.Penal Code Ann. sec. 1.07(a)(26) (Vernon 1974), which defines "penal institution" as "[a] place designated by law for confinement of persons arrested for, charged with, or convicted of an offense." As stated in *Ex parte Abbey,* the purpose of the second primary paragraph to indict under sec. 38.07(c)(2), could have been achieved by alleging only that appellant had been arrested for, or charged with, *any* offense, felony or misdemeanor. 574 S.W.2d at 106. Allegation and proof of *conviction* of an offense was not required.

■ Thus, the indictment's allegation that appellant had been *convicted* of burglary of a habitation with intent to commit theft was one among numerous equally available alternatives. The allegation was proper but excessive to the extent that the lesser allegation that he escaped from a penal institution after merely being arrested for, or charged with, the named offense (or some other offense, felony or misdemeanor) would have equally sufficed to allege felony escape under sec. 38.07(c)(2). The allegation of appellant's prior conviction for burglary was, therefore, not an "essential" element of the primary offense of felony escape under the statute. Accordingly, the quoted *"Garcia* rule" is inapplicable, and appellant's prior conviction was available for allegation and proof to enhance his punishment. Appellant's first point of error is overruled.

■ Appellant's second point of error alleges that the evidence is insufficient to sustain the conviction in that it fails to show that the Texas House was a penal institution, as required by sec. 38.07(c)(2).

In argument, he urges that his unauthorized departure from Texas House should have been treated as conduct in the nature of an administrative violation of conditions of parole, and not as a criminal act.

The indictment's second primary offense paragraph effectively alleged that Texas House is "a penal institution" and that appellant escaped from his confinement in the Texas House, "a place designated by law to [sic] confinement of persons arrested for, charged with and convicted of offenses." As stated in point of error one, the quoted words constitute a near verbatim definition of "a penal institution" as found in Penal Code sec. 1.07(a)(26).

■ This Court is authorized to take judicial notice of the statutes authorizing the establishment and operation of penal institutions. *Legg v. State,* 594 S.W.2d 429, 432 (Tex.Crim.App.1980).

Tex.Rev.Civ.Stat.Ann. art. 6166x–4 established preparole transfer, effective June 19, 1983. The statute provides that the Director of TDC may transfer an eligible prisoner to a "community residential facility," as defined, not more than 180 days before the prisoner's "presumptive parole date," and that, with exceptions, the prisoner shall serve the remainder of his sentence prior to release on parole in the facility designated. Sec. 2(a).

Sec. 2(b) states:

At the time of the transfer of the prisoner, the department shall designate a community residential facility approved by the board as the prisoner's assigned unit of confinement. A prisoner transferred pursuant to the terms of this article is deemed to be in the continuing actual physical custody of the department and is subject to the good conduct time provisions of Article 6181–1, Revised Statutes.

TDC Correctional Officer Harmon Davis testified that Texas House was a halfway house or correctional facility designated by law for confinement of persons arrested, or charged with, or convicted of offenses; that it was a designated unit of TDC; that appellant was approved by the pre-parole program office and TDC's Bureau of Records and Classifications for the preparole program; and that appellant was assigned to Texas House.

The "Pre-Parole Program Certificate," or certificate of agreement, assigning appel-

lant to Texas House was admitted into evidence. This document, which showed appellant's acknowledgment by his signature, recited in part:

This residence has been approved by the Board of Pardons and Paroles, and the Texas Department of Corrections has designated this residence as a community corrections facility of the department and the inmates unit of assignment.

Provision 3–A of the agreement reads:

I shall not leave the physical confines of the residence which I am assigned, or its property, except for traveling to and from work and while working, or as authorized by the half-way house rules.

Provision 9 of the agreement recited that an inmate would be considered an escapee by TDC if he was either absent from his unit of assignment without permission of the halfway house staff or his parole officer, or for failing to sign out of the house, or if the parole officer had probable cause to believe the inmate was evading supervision. It further stated that under those circumstances the inmate could be prosecuted for the felony offense of escape.

Appellant reasons that the statutory system devised under art. 6166x–4 for pre-parole transferees is "virtually indistinguishable" from parole supervision, and that his conduct in leaving Texas House should have been dealt with as a disciplinary matter in the nature of a violation of conditions of parole. He argues that while such conduct might be the basis of the postponement of his parole date, or even his removal from the pre-parole program, it ought not to be regarded as a criminal offense.

He points out that under art. 6166x–4, sec. 3(b), the pre-parole halfway house resident is subject to supervision by both the Board of Pardons and Paroles and by TDC, and must obey the Board's orders as well as those of TDC; that a parole officer assigned by the Board supervises the assigned prisoner and makes periodic written reports to TDC and the Board; that the. parole officer must report in writing to TDC and the Board any violation by the prisoner of the terms of the transfer agreement or of the rules of the halfway house facility; and that the parole officer makes recommendations to TDC as to disciplinary action, if any, including rescission or revision of presumptive parole date.

Buttressing these similarities to parole status, appellant urges, is the fact that the legislature neither included an offense of escape within art. 6166x–4, nor amended Penal Code sec. 38.06, the escape statute, to clearly include halfway houses and their parole-like living conditions within the act.

We again disagree. Art. 6166x–4 shows that the preparole inmate transferee is not to be equated in law with a parolee. First, sec. 2(b) provides that at the time of the prisoner's transfer, TDC must designate an approved community residential facility as the prisoner's "assigned unit of confinement." Such language is consistent with Penal Code sec. 1.07(a)(26), defining a "penal institution" as "a place designated by law for confinement of persons [arrested, charged, or convicted of an offense]." Second, sec. 2(b) states that the prisoner accorded pre-parole transfer "is deemed to be in the continuing actual physical custody of [TDC]." The use of such terms as "unit of confinement" and "continuing actual physical custody" connotes continuing imprisonment. By contrast, parole is "a form of constructive custody." *Ex parte Peel*, 626 S.W.2d 767 (Tex.Crim.App.1982).

Third, sec. 2(b) provides that the pre-parole transferee "is subject to the good conduct time provisions of Art. 6181–1...." Persons on parole are not entitled to good time credit or trusty time. *Ex parte Peel*, 626 S.W.2d 767.

Finally, appellant argues that the certificate of agreement is of no value to the State's case because it is an attempt to allow TDC "to determine what constitutes an escape by virtue of an agreement entered into between that department and the appellant." To allow such an agreement would be an unconstitutional delegation of legislative authority and unconstitutionally vague, he urges, citing *Ex parte Wilmoth*, 125 Tex.Cr.R. 274, 67 S.W.2d 289 (1934),

and *Cotton v. State*, 686 S.W.2d 140 (Tex. Crim.App.1985).

We disagree. The certificate of agreement does not constitute an attempt to authorize private contractual agreements between TDC and its pre-parole inmates as to the substantive law of felony escape. The written exhibit was admissible to show the State's compliance with art. 6166x–4, sec. 2(b) by designating Texas House as appellant's assigned unit of confinement at the time of his transfer. Such evidence was an element of the State's required proof that Texas House was a "penal institution." Tex.Penal Code sec. 1.07(a)(26).

Appellant's second point of error is overruled.

The judgment is affirmed.