James ROY, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–89–00793–CR.

Court of Appeals of Texas,
Dallas.

May 15, 1991.

Rehearing Overruled June 20, 1991.

Discretionary Review Refused
Sept. 11, 1991.

Ronald D. Wells, Gary A. Udashen, Dallas, for appellant.

Sharon Batjer, Dallas, for appellee.

Before ENOCH, C.J., and BAKER and KINKEADE, JJ.

OPINION ON RECONSIDERATION ON PETITION FOR DISCRETIONARY REVIEW

KINKEADE, Justice.

Pursuant to rule 101 of the Texas Rules of Appellate Procedure, we withdraw our earlier opinion issued on February 7, 1991, and substitute the following opinion. TEX. R.APP.P. 101.

James Roy appeals his conviction for felony escape. After a jury trial, the jury assessed punishment at twenty years' confinement. In ten points of error, Roy claims that (1) the presiding judge improperly presided over the trial; (2) the trial court erred when it overruled his objection to the State's use of peremptory challenges to exclude African–Americans from the jury, when it allowed the admission of uncertified penitentiary packets to prove a previous conviction, and when it allowed the admission of hearsay evidence; and (3) the evidence is insufficient to support the verdict or the second paragraph of the indictment. Sufficient evidence exists to confirm the conviction, but because the trial court allowed the erroneous admission of an uncertified judgment and sentence at

the punishment phase of trial, we reverse and remand for further proceedings. TEX. CODE CRIM.PROC.ANN. art. 44.29(b) (Vernon 1981).

## FACTS

On May 27, 1988, Roy, a pre-parolee transfer from the Texas Department of Corrections, walked away from the Dallas County Residential Center. Norman Smith, a parole officer employed by the State Board of Pardons and Paroles, testified that the Center was Roy's Texas Department of Corrections unit of assignment. Dallas Police Officer Daniel Hebert testified that he arrested Roy on January 17, 1989, after determining that a valid warrant existed for his arrest for felony escape from the Texas Department of Corrections. The indictment alleged that Roy:

knowingly, and intentionally, after conviction of the offense of Burglary, a felony, and while confined in a penal intitution [sic], to-wit: the Dallas County Residential Center, 3949 Maple Avenue, Dallas, Dallas County, Texas, escape from custody, ...

The indictment also alleged two prior offenses for enhancement purposes. The jury found Roy guilty as charged in the indictment.

At the guilt/innocence phase of the trial, a Dallas County deputy sheriff identified Roy by comparing a set of fingerprints taken on the trial date with those contained in a penitentiary packet. Defense counsel objected to the penitentiary packet because the judgment and sentence for the 1987 Dallas County conviction contained in the packet lacked certification by the Dallas County District Clerk. The trial court admitted the penitentiary packet.

At the punishment phase, the trial court admitted penitentiary packets for Roy's 1978 Dallas County conviction for delivery of a controlled substance and his 1984 Dallas County conviction for burglary of a building. Defense counsel again objected on the ground of lack of certification of the judgments. The trial court admitted the penitentiary packets. The packet for the 1984 Dallas County burglary conviction contained a Henderson County judgment for a 1985 burglary of a habitation conviction. The 1978 Dallas County and the 1985 Henderson County judgments contained the proper certification. The 1984 Dallas County conviction lacked proper certification.

## APPLICABLE STATUTES AND DEFINITIONS

The State charged Roy with felony escape under section 38.07 of the Texas Penal Code, which provides in pertinent part:

(a) A person commits an offense if he escapes from custody when he is:

(1) under arrest for, charged with, or convicted of an offense; or

(2) in custody pursuant to a lawful order of a court.

. . . .

(c) An offense under this section is a felony of the third degree if the actor:

(1) is under arrest for, charged with, or convicted of a felony; or

(2) is confined in a penal institution.

TEX.PENAL CODE ANN. § 38.07 (Vernon 1979). Texas law defines penal institution as "a place designated by law for confinement of persons arrested for, charged with, or convicted of an offense." TEX.PENAL CODE ANN. § 1.07(a)(26) (Vernon 1974). At the time of Roy's escape, the legislature generally vested the Texas Department of Corrections with the statutory authority to designate penal institutions. TEX.REV.CIV. STAT.ANN. art. 6166g (Vernon 1970), *repealed by* Act of May 26, 1989, 71st Leg., ch. 212, § 3.03. Although article 6166g generally provided for the Texas Department of Corrections' exclusive management and control of the prison system, it specifically subjected that management and control to limitations in the area of pre-parolee transferees, like Roy, pursuant to former article 6166x–4 (now TEX.GOV'T CODE ANN. §§ 498.001–.005 (Vernon 1988)). Article 6166x–4 related to the "pre-parole transfer of prisoners to community residential facilities and *to certain powers and duties* of the Texas Department of Corrections ... *and* the Board of Pardons and Paroles and its officers...." Pre–Parole

Transfer of Prisoners Act, 68th Leg., R.S., ch. 548, § 1, 1983 Tex.Gen.Laws 3190 (emphasis added). Article 6166x–4 provides in pertinent part:

Section 1. In this article:

. . . .

(2) Community residential facility means a halfway house certified by and under contract with *the Board of Pardons and Paroles* . . . or another facility or residence *approved by the Texas Department of Corrections and the Board of Pardons and Paroles.*

. . . .

(5) Eligible prisoner means a prisoner or inmate in the actual physical custody of the Texas Department of Corrections for whom a presumptive parole date has been established by *the Board of Pardons and Paroles.* . . .

. . . .

Section 2.

. . . .

(b) At the time of the transfer of the prisoner, the [Texas Department of Corrections] shall designate a community residential facility *approved by the [Board of Pardons and Paroles]* as the prisoner's assigned unit of confinement. A prisoner transferred pursuant to the terms of this article is deemed to be in continuing actual physical custody of the [Texas Department of Corrections]. . . .

. . . .

Section 3.

. . . .

(b) *On transfer, the prisoner is subject to supervision by the [Board of Pardons and Paroles] and shall obey the orders of the [Board of Pardons and Paroles] and* the [Texas Department of Corrections].

. . . .

Tex.Rev.Civ.Stat.Ann. art. 6166x–4 (Vernon 1983), *repealed by* Act of May 26, 1989, 71st Leg., ch. 212 § 3.03 (emphasis added). Article 6166x–4 clearly indicates that when a prisoner transfers to the pre-parole program that *both* the Board of Pardons and Paroles and the Texas Department of Corrections must act jointly. The community residential facility to which the prisoner transfers becomes his unit of assignment. Although the Texas Department of Corrections chooses the facility to which the prisoner will transfer, that facility must be one approved by the Board of Pardons and Paroles. Therefore, as to a pre-parolee, the Texas Department of Corrections no longer enjoys the exclusive power to designate an approved penal institution. Rather, it must rely on the Board of Pardons and Paroles for that designation. A community residential facility must be either a halfway house certified by and under contract with *the Board of Pardons and Paroles* or the law requires another facility or residence approved by the Texas Department of Corrections *and the Board of Pardons and Paroles.* With these statutes and definitions in mind, we turn to a discussion of the merits of Roy's argument.

## PRESIDING JUDGE

In his eighth point of error, Roy contends that the visiting judge who presided over his trial, a former judge of the 18th District Court, lacked the authority to do so. He argues that the presiding judge only received assignment to the 194th District Court of Dallas County during the period of time this trial took place. Since this case occurred in the 195th District Court, Roy argues the judge lacked jurisdiction to hear the case. *Akin v. Tipps,* 668 S.W.2d 432, 434 (Tex.App.—Dallas 1984, no writ).

Roy misplaces his reliance on *Akin.* In *Akin,* a former judge received assignment to the 193rd District Court solely for the purpose of concluding matters in a prior related action. Therefore he lacked the authority to hear *any* other matters, whether initially assigned to the 193rd or transferred there. *Id.* In the present case, the presiding judge received an assignment to act in the *same capacity as the duly elected district judge.*

Roy failed to object to the appointed judge's authority to hear this case during trial. Roy waived any error by his failure to make a timely objection to the authority of a judge from another district court to preside over his case. *Bonilla v. State,*

740 S.W.2d 583, 588 (Tex.App.—Houston [1st Dist.] 1987, pet. ref'd). Article V, section 11 of the Texas Constitution provides in pertinent part that:

> District Judges may exchange districts, or hold courts for each other when they may deem it expedient, and shall do so when required by law.

TEX.CONST. art. V, § 11. Further, section 74.059(a) of the Texas Government Code provides that "[a] judge assigned under the provisions of this chapter has all the powers of the judge of the court to which he is assigned." TEX.GOV'T CODE ANN. § 74.-059(a) (Vernon 1988). Whether the judge received assignment by administrative order to the 194th District Court or the 195th District Court remains unimportant since he may sit in either court. *See Peach v. State*, 498 S.W.2d 192, 195 (Tex.Crim.App. 1973), *rev'd on other grounds, Jackson v. State*, 548 S.W.2d 685, 690 n. 1 (Tex.Crim. App.1977). Neither the docket sheet nor the minutes need state a reason for the exchange of benches by district judges. No formal order need be entered. *Mata v. State*, 669 S.W.2d 119, 121 (Tex.Crim.App. 1984); *Peach*, 498 S.W.2d at 195. Because the visiting judge possessed all of the powers of the judge of the court to which he was assigned, the judge had jurisdiction to hear this case. We overrule Roy's eighth point of error.

### *BATSON* CHALLENGES

In his fourth and fifth points of error, Roy contends that the trial court erred in overruling his objection to the State's use of peremptory challenges to exclude two African–Americans from the jury panel in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Roy argues that the State used peremptory challenges in a discriminatory manner when it struck venirepeprsons Beck and Smith.

 Under *Batson*, Roy must establish a prima facie case of racial discrimination. Once Roy establishes a prima facie case, the burden shifts to the State to come forward with a neutral explanation for

challenging the African–American venire-members. *Batson*, 476 U.S. at 96–97, 106 S.Ct. at 1723. However, upon review, this Court first ascertains whether the State met its requirements, assuming Roy properly asserted a prima facie case, before looking to Roy's initial burden. *Salazar v. State*, 795 S.W.2d 187, 191 (Tex.Crim.App. 1990), *citing Dewberry v. State*, 776 S.W.2d 589, 591 n. 2 (Tex.Crim.App.1989). If the State presents genuine race-neutral explanations for its peremptory strikes, the issue of whether Roy actually established a prima facie case becomes irrelevant. *See Salazar*, 795 S.W.2d at 192.

#### A. Standard of Review

 In reviewing the findings of the trial court on *Batson* issues, this Court follows the clearly erroneous standard. We analyze the decision of the trial court by reviewing the record in its entirety, by considering the voir dire process including the make-up of the venire, the prosecutor's explanation, and Roy's rebuttal and impeachment evidence. *Whitsey v. State*, 796 S.W.2d 707, 726 (Tex.Crim.App.1990) (op. on reh'g). A finding remains clearly erroneous even though evidence exists to support it if a review of the entire record leaves the reviewing court with the definite and firm conviction that the trial court committed a mistake. *Id.* at 721. We must evaluate the trial court's findings with regard to each minority venireman struck because *Batson* prohibits the use of even one purely racially motivated strike. *Id.* at 727, *citing Henry v. State*, 729 S.W.2d 732, 737 (Tex.Crim.App.1987).

#### B. Evidence Adduced at the Batson Hearing

At the end of voir dire, thirty-two potential veniremembers remained. Of that number, twelve African–American venire-members remained among the other white veniremembers. The State used seven of its peremptory strikes against African–Americans and three against whites. Roy used one of his peremptory strikes against an African–American. Five African–Americans served on the jury. African–Ameri-

cans composed over forty percent of the jury.

### Venireperson Beck

■ In his fourth point of error, Roy contends that the State struck venireperson Beck because of racial reasons. The record reveals that the State gave two reasons for striking venireperson Beck. First, she left her juror information card almost blank. Second, her father had been arrested for driving while intoxicated, and her brother for criminal mischief. The refusal to provide the requested information indicated to the State a lack of interest by venireperson Beck in the proceedings. Further, the State indicated that it believed that venireperson Beck's brother's and father's problems with the law would negatively influence her against the State.

In rebuttal, Roy pointed out that other juror cards also contained one or more blank spaces and estimated that at least twenty percent of the jurors indicated that they had relatives in trouble with the law. After Roy's rebuttal, the court interjected that venireperson Beck left seven matters unanswered, and the State enumerated the lacking information. On appeal, Roy also points out that venireperson Beck stated that the situations with her father and brother failed to cause her any problem and that she remained able to set them aside.

The record shows that numerous venirepersons responded to the State's question concerning whether their or their family's background indicated any trouble with the law. When the State asked this question it went row by row allowing the venirepersons to respond. Although venireperson Beck appeared as the fourth venireperson on the first row, she failed to respond to this question until after all the other venirepersons responded. Venireperson Beck stated that she remained capable of setting aside her feelings concerning her relatives' problems with the law. However, her hesitation in answering the question promptly indicated a possible inability remained in her mind. The record also shows that, although several other venirepersons left blanks on their information cards, none of them left more than two blanks. Furthermore, no other venireperson told of relatives with criminal histories and left blanks on their information cards. Because the State gave racially-neutral explanations supported by the record, the trial court correctly overruled Roy's objections. We overrule Roy's fourth point of error.

### Venireperson Smith

■ In his fifth point of error, Roy contends that the State struck venireperson Smith because of racial reasons. The record reveals that the State struck venireperson Smith because of her response to the State's question near the beginning of voir dire concerning whether anyone's physical problems prevented jury service. Venireperson Smith stated that her back hurt and that sitting for long periods of time aggravated her back. The State also noted that venireperson Smith appeared pregnant, arched her back during questioning, and appeared to wear maternity clothes. The State indicated that because of venireperson Smith's discomfort, it feared her lack of attention and ability to give both sides a fair trial.

In rebuttal, Roy pointed out that venireperson Berman, who served on the panel, admitted pregnancy and that she needed regular restroom breaks if she sat for extended periods of time. Roy further noted that juror Berman failed to say whether her pregnancy affected her ability to serve on the jury.

The record shows that although both venirepersons Smith and Berman appeared pregnant, one's problem appeared capable of remedy and one's lacked any remedy. Venireperson Smith complained early in the trial process that her back hurt and that she anticipated having trouble sitting, even after the State pointed out that the chairs the jurors used contained padding. On the other hand, juror Berman only indicated that she needed restroom breaks if she sat for a long period of time. Because the State gave a racially-neutral explanation supported by the record, the trial court again correctly overruled Roy's objections. We overrule Roy's fifth point of error.

FELONY ESCAPE

■ Under section 38.07 of the Texas Penal Code, the State must first establish Roy's custody. Additionally, felony escape requires the State to allege and prove at least one of the two theories of subdivision (c). The State must show (1) that Roy escaped from custody when under arrest for, charged with, or under conviction for a felony offense or (2) that he escaped from a penal institution after being arrested for, charged with, or under conviction for any offense. The allegation and proof on either one of the two theories provides sufficient evidence to sustain a conviction for the offense of third-degree felony escape. *McWilliams v. State*, 782 S.W.2d 871, 874 (Tex.Crim.App.1990)).

A. The First Theory of Felony Escape

■ In his third point of error, Roy contends the trial court erred in admitting a penitentiary packet into evidence to prove the burglary conviction alleged by the State. At the guilt/innocence phase of the trial, the State introduced a penitentiary packet for a 1987 Dallas County conviction of burglary of a building. Roy objected to the admission of the penitentiary packet because the judgment and sentence lacked certification by the Dallas County District Clerk.

Roy relies on *Dingler v. State*, 723 S.W.2d 806 (Tex.App.—Tyler 1987), *aff'd*, 768 S.W.2d 305 (Tex.Crim.App.1989). The *Dingler* court held that the Department of Corrections' record custodian failed to properly certify and authenticate a penitentiary packet because the copies of the judgments in the penitentiary packet failed to reflect whether the district clerk in the convicting county had certified the originals. *Id.* at 305–06.

The State argues that, in spite of *Dingler*, the court correctly allowed the admission of Roy's penitentiary packet. The State relies on common knowledge that the Department of Corrections never accepts inmates without certified copies of the judgment and sentence showing a conviction for a felony, which paper then becomes part of the official records of the Depart-

ment of Corrections. *See Ricondo v. State*, 634 S.W.2d 837, 844 (Tex.Crim.App. 1982) (op. on reh'g); *Blakes v. State*, 634 S.W.2d 319, 320 (Tex.Crim.App.1982). The State asserts that proof of Roy's incarceration at the Texas Department of Corrections establishes that the institution received certified copies of Roy's judgment and sentence.

Despite the State's argument, the *Dingler* court's rationale remains alive and well. *See Reed v. State*, 811 S.W.2d 582 (Tex.Crim.App.1990) (per curiam); *but see Handspur v. State*, 792 S.W.2d 239, 241–49 (Tex.App.—Dallas 1990, pet. granted) (Onion, J., dissenting). We find that the *Dingler* court's analysis equally applies to penitentiary packets introduced under rule 902 of the Texas Rules of Criminal Evidence. TEX.R.CRIM.EVID. 902. Thus, the trial court erred by admitting the uncertified judgment.

■ Because we find error, we must reverse the judgment unless we determine beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment. TEX.R.APP.P. 81(b)(2). In applying this rule, we focus not on the propriety of the trial's outcome but on the integrity of the process leading to the conviction. This Court examines the source of the error, the nature of the error, whether or to what extent the State emphasized it, and its probable collateral implications. Further, we consider how much weight a juror would probably place on the error. We first isolate the error and all its effects, using the considerations set out above and any other considerations suggested by the facts. Second, we ask whether a rational trier of fact might have reached a different result if the error and its effects had not occurred. *Harris v. State*, 790 S.W.2d 568, 587–88 (Tex.Crim.App.1989).

■ The erroneous admission of the uncertified judgment and sentence effectively provided the State with proof of an essential element of the offense. *See McWilliams*, 782 S.W.2d at 874; *Ex parte Abbey*, 574 S.W.2d 104, 106 (Tex.Crim.App.1978). The 1987 Dallas County judgment was the only evidence presented by the State to

prove the felony conviction required under section 38.07(c)(1). Because a rational trier of fact could have reached a different result if the error and its effect had not occurred, the error contributed to Roy's conviction and harmed him. We sustain Roy's third point of error. Since the State cannot sustain Roy's conviction under the first theory of felony escape, we must now determine whether it can sustain it under the second theory.

### B. The Second Theory of Felony Escape

In his seventh point of error, Roy contends that the trial court erred when it overruled his hearsay objection to testimony by Parole Officer Norman Smith that the Dallas County Residential Center met the definition of a penal institution approved by the Texas Department of Corrections. The pertinent part of the record reads as follows:

Q: Is the Dallas County Residential Center at 3949 Maple Avenue, Dallas, County, Texas, a penal institution in that it is designated by law for confinement of persons convicted of an offense?

A: Yes, it is.

Q: And is the Dallas County Residential Center at 3949 Maple Avenue, Dallas, Dallas County, Texas a halfway house certified by and under contract with the Board of Pardons and Paroles or is it another facility or residence approved by the Texas Department of Corrections and the Board of Pardons and Paroles?

A: That's correct.

[DEFENSE COUNSEL]: Excuse me, I'll object again on the stated grounds this is hearsay, and likewise the previous answers given to the question just elicited that it is hearsay, that he's qualified to testify to those areas and it's not the best evidence of that proof, if such proof exists. And those objections would be renewed again in the presence of the jury.

THE COURT: Overruled.

### Untimely Objection

Roy made his objection too late to preserve error. A party must urge a timely objection to inadmissible evidence at the first opportunity. *Guzman v. State,* 521 S.W.2d 267, 269 (Tex.Crim.App.1975). Before the State asked the questions at issue, Smith testified without objection as follows to all of the operational elements of the definition of penal institution:

| Operational Elements | Trial Testimony |
| --- | --- |
| | Smith's Testimony Entered Without Objection |
| 1. A place designated by law | The Center existed as a halfway house contracted by the Board of Pardons and Paroles in conjunction with the Texas Department of Corrections. |
| | The Center remained a Texas Department of Corrections unit of assignment for pre-parolees. |
| | The Texas Department of Corrections sent Roy to the Center. |
| 2. For confinement of persons | The pre-parole system becomes a vehicle whereby convicted inmates remain in custody of the Texas Department of Corrections, but the Texas Department of Corrections allows them to assimilate into society. |
| | While at the Center the pre-parolees must sign in and out when they leave, remain restricted to certain areas if they remain there during the day, and all doors get locked at night keeping the pre-parolees inside. |
| 3. Convicted of an offense. | Roy became a pre-parolee assigned to the Center. |
| | Pre-parolees have been convicted of felonies and sent to prison. |
| | Pre-parolees remain inmates of the Texas Department of Corrections and are still in custody. |

If Roy desired to object to the State's questions regarding the status of the facility on the basis of hearsay, these questions clearly revealed the arrival of the time to object. By waiting until the State used the magic words "penal institution," Roy waited too long. He waived his hearsay objection by failing to make a timely objection to allegedly inadmissible evidence at the first opportunity.

## Judicial Notice

 Additionally, the record shows, even without the objectionable testimony from Parole Officer Smith, that the Center constituted a penal institution. The Preparole Program Certificate of Agreement admitted into evidence (see discussion of point of error six below) became one element of the State's proof that the Center constituted a penal institution. Judicial notice provides the balance of the proof. *McWilliams v. State*, 719 S.W.2d 380, 383 (Tex.App.—Houston [1st Dist.] 1986), *rev'd on other grounds*, 782 S.W.2d 871 (Tex. Crim.App.1990); *see also Legg v. State*, 594 S.W.2d 429, 432 (Tex.Crim.App.1980). Even assuming the testimony constituted hearsay, its admission became harmless. Tex.R.App.P. 81(b)(2).

## Personal Knowledge

 Finally, hearsay fails to affirmatively appear in the record. Before the State asked the questions at issue, it asked Parole Officer Smith numerous questions about his background and experience at the Center. He testified without objection that the State Board of Pardons and Parole employed him as a parole officer and assigned him to the Center. At the Center he supervised both parolees and pre-parolee transfers assigned there by the Texas Department of Corrections. Further, Parole Officer Smith stated that the Texas Department of Corrections brings the pre-parolees directly to the facility by bus and assigns them a parole officer who gets a packet of information on them. He also testified without objection extensively about the day-to-day activities at the Center, that the Center was a Texas Department of Corrections unit of assignment, and that persons assigned there were still serving sentences and were still in custody. If Smith knows the residents are still inmates in custody at this facility, which is a Texas Department of Corrections unit of assignment, then the judge is justified in finding that Smith had personal knowledge that this unit of assignment is a penal institution.

At a minimum, when the State put forth some evidence of personal knowledge, it then became Roy's burden to rebut the evidence. 1 R. Ray, Texas Practice: Law Of Evidence § 669 (Supp.1990); *cf. United States v. Davis*, 792 F.2d 1299, 1304–05 (5th Cir.), *cert. denied*, 479 U.S. 964, 107 S.Ct. 464, 93 L.Ed.2d 409 (1986), (interpreting Federal Rule of Evidence 602); *Celotex Corp. v. Tate*, 797 S.W.2d 197, 206 (Tex. App.—Corpus Christi, 1990, n.w.h.) (interpreting Rule of Civil Evidence 602). Roy chose not to voir dire or to cross-examine the witness. If Parole Officer Smith testified on any basis other than personal knowledge, Roy could have shown this on cross-examination or by taking the witness on voir dire to explore the source of Parole Officer Smith's knowledge. Roy failed to probe the source of Parole Officer Smith's knowledge to the extent that this Court becomes justified in holding that the evidence concerning the Board of Pardons and Paroles and the Texas Department of Corrections' approval of the Center was founded entirely on hearsay. *See Hughes v. State*, 508 S.W.2d 167, 170 (Tex.Crim.App. 1974).

## Conclusion

Because (1) Parole Officer Smith testified to all the operational elements of a penal institution prior to Roy's objection, (2) the court could take judicial notice that the Center met the definition of a penal institution, and (3) evidence exists that Parole Officer Smith possessed personal knowl-

edge that the Center constituted a penal institution, we overrule Roy's seventh point of error.

## PRE–PAROLE PROGRAM CERTIFICATE OF AGREEMENT

In his sixth point of error, Roy contends that the trial court erred when it overruled his hearsay objection to Roy's pre-parole program certificate of agreement. Roy argues that the document lacked certification by the Texas Department of Corrections. Roy further argues that the document fails to come within any of the applicable hearsay exceptions. Finally, Roy argues that the State offered the document into evidence to prove his participation in the pre-parole program and his possession of the knowledge that leaving the Center without permission constituted escape.

Unless the State offers an out of court statement for the truth of the assertion contained therein, it fails to constitute hearsay. *See* Tex.R.Crim.Evid. 801(a). Where the State introduces an out-of-court statement not for its truth or falsity but for the fact that Roy made it, the writing, words, or other communication constitutes original evidence and not hearsay. *Burchfield v. State,* 475 S.W.2d 275, 277 (Tex. Crim.App.1972). The agreement also fails to constitute hearsay if it contains no "statement" or "assertion," the truth of which the State sought to establish by its introduction into evidence. *Compton v. State,* 607 S.W.2d 246, 252 (Tex.Crim.App. 1979), *cert. denied,* 450 U.S. 997, 101 S.Ct. 1701, 68 L.Ed.2d 197 (1981).

The agreement outlined the rules and regulations of the pre-parolee program. Prior to the State seeking its introduction, Parole Officer Smith testified about the Center's rules and that he counseled Roy as a participant in the pre-parolee program. A review of the record shows that the State apparently sought the introduction of the agreement to establish that Roy received the agreement and that he possessed knowledge of its contents. The State made no attempt to establish the truth of the statements contained within the agreement. Because the State introduced the agreement merely to show that Roy signed it and had knowledge of its contents, the trial court correctly overruled his objections. We overrule Roy's sixth point of error.

## SUFFICIENCY OF THE EVIDENCE

### A. Evidence to Support the Verdict

In his first and second points of error, Roy contends that insufficient evidence exists to support the verdict. He argues that the State, under the statute, must prove a connection between the felony conviction and the confinement. That is, the State must link Roy's custody to the 1987 Dallas County burglary conviction alleged in the indictment. Roy further argues that because the judgment and sentence lacked proper certification, the State failed to establish that it previously convicted him of burglary.

When reviewing the sufficiency of the evidence, the relevant inquiry remains whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Beardsley v. State,* 738 S.W.2d 681, 683 (Tex.Crim.App.1987). Upon review, this Court must consider both properly and improperly admitted evidence. *Beltran v. State,* 728 S.W.2d 382, 389 (Tex. Crim.App.1987). Also, we review all of the evidence adduced at both stages of the trial. *See DeGarmo v. State,* 691 S.W.2d 657, 661 (Tex.Crim.App.), *cert. denied,* 474 U.S. 973, 106 S.Ct. 337, 88 L.Ed.2d 322 (1985).

An accused commits the offense of felony escape if he unlawfully leaves custody (1) while under arrest for, charged with, or convicted of *any* felony offense; or (2) while confined in a penal institution for *any* criminal offense. *See McWilliams,* 782 S.W.2d at 874; *Ex parte Abbey,* 574

S.W.2d at 106. The State alleged that Roy escaped from custody while under conviction for a felony, a burglary, and while confined in a penal institution. The State must prove either the conviction or the confinement, but not both. *McWilliams*, 782 S.W.2d at 874. It follows that the State need not prove that the confinement and custody resulted from the conviction.

 When viewed in the light most favorable to the verdict, the evidence adduced at both stages of the trial shows that Roy knowingly and intentionally escaped from custody after conviction of a felony. Although the pen packet introduced during the guilt/innocence phase of trial lacked certification as alleged by Roy, the pen packet introduced during the punishment phase of trial contained a 1985 Henderson County burglary conviction that showed the proper certification. The evidence also showed that Roy knowingly and intentionally escaped from a penal institution when he was then under a conviction for a criminal offense. Because we find the evidence was sufficient for any rational trier of fact to have found the essential elements of the offense of felony escape beyond a reasonable doubt, we overrule Roy's first point and second points of error.

### B. Evidence to Support Enhancement

 In his ninth point of error, Roy contends that the evidence was insufficient to support a finding of true to the second paragraph of the indictment. Again, we review all of the evidence, even if erroneously admitted, to determine whether, in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the enhancement paragraph true beyond a reasonable doubt. *See Beardsley*, 738 S.W.2d at 683; *Beltran*, 728 S.W.2d at 389. The State introduced a penitentiary packet containing the judgment and sentence for the conviction described in the second paragraph. Because we find that the evidence sufficient for any rational trier of fact to find the essential elements of the enhancement paragraph true, we overrule Roy's ninth point of error.

### ENHANCEMENT PARAGRAPH

 In his tenth point of error, Roy contends that the trial court erred when it admitted a penitentiary packet into evidence to prove a conviction alleged in the first paragraph to enhance punishment. The State offered a penitentiary packet at the punishment phase of the trial. It contained documentation of two prior convictions, a 1984 Dallas County conviction and a 1985 Henderson County conviction. Roy objected because the Dallas County judgment and sentence lacked certification by the Dallas County District Clerk. For the same reasons set forth in our discussion of Roy's third point of error, we find that the trial court erred by admitting the uncertified Dallas County judgment and sentence. The penitentiary packet constituted the sole evidence presented to the jury to prove the conviction alleged in the first enhancement paragraph. We conclude a rational trier of fact could have reached a different result if the error and its effect had not occurred. Because we cannot determine beyond a reasonable doubt that the error made no contribution to the punishment, we sustain Roy's tenth point of error.

### CONCLUSION

Although the State failed to meet its burden of proof as to the first theory of felony escape, it met its burden under the second theory. Because the State met that burden, we affirm Roy's conviction. However, because we cannot determine that the introduction of the uncertified judgment at the punishment phase did not contribute to Roy's punishment, we reverse and remand the case for further proceedings. TEX. CODE CRIM.PROC.ANN. art. 44.29(b) (Vernon 1981).

BAKER, J., dissenting for the reasons given in his original dissenting opinion of February 7, 1991.

BAKER, Justice, dissenting.

I dissent. While I agree with the majority's disposition of points of error three and ten that the admission of the uncertified

pen packets was error, I would also sustain appellant's seventh point of error.

The majority holds that it was not error for the trial court to admit the hearsay testimony that the Dallas County Residential Center was a penal institution. I disagree. Hearsay is hearsay. In its hopscotch efforts to find the testimony admissible, the majority fabricates a basis for the evidentiary leap the State failed to make at trial. I cannot agree.

## DEFINITIONS

We must first return to the elements of this offense. The first essential element of any escape offense under section 38.07 is that the defendant was in custody. TEX.PENAL CODE ANN. § 38.07 (Vernon 1989). *Felony* escape additionally requires the State to allege and prove at least one of the two prongs of subdivision (c): (1) that the defendant escaped from custody when under arrest for, charged with, or under conviction for a felony offense; or (2) that he escaped from a penal institution after being arrested for, charged with, or under conviction for any offense. The allegation and proof of either one of the two prongs are sufficient to sustain a conviction for the offense of third-degree felony escape. *McWilliams v. State*, 782 S.W.2d 871, 874 (Tex.Crim.App.1990).

A penal institution is "a place designated by law for confinement of persons arrested for, charged with, or convicted of an offense." TEX.PENAL CODE ANN. § 1.07(a)(26) (Vernon 1974).

The State must first prove that Roy was in custody. It did prove that Roy had been confined in a halfway house. I agree this was sufficient to prove the custody element of the offense. The State then had to prove at least one of the two prongs of subdivision (c). I agree with the majority that the State failed to prove subdivision (1) because the pen packets evidencing Roy's felony convictions were not properly certified. So the State had to prove subdivision (2), that Roy had been confined in a penal institution, before it could convict Roy of felony escape. The State did prove Roy's confinement in a halfway house. But it

also had to prove that the halfway house where Roy was confined was a place designated by law for the confinement of persons arrested for, charged with, or convicted of an offense.

## TRIAL ERROR

We now turn to Roy's argument. In his seventh point of error, Roy contends the trial court erred in overruling his hearsay objection to testimony by the Texas Board of Pardons and Paroles' employee Smith that the Dallas County Residential Center was a penal institution. *See* TEX.R.CRIM. EVID. 801(d). I agree. None of the four rationales advanced by the majority to render the testimony admissible withstands careful scrutiny.

### 1. Appellant Preserved His Hearsay Objection

The majority initially contends that appellant's hearsay objection came too late. It rests its reasoning on two foundations. The majority first concludes that the appellant's objection was too late because the question was asked and answered, citing *Guzman v. State*, 521 S.W.2d 267, 269 (Tex.Crim.App.1975). The exchange quoted by the majority occurred *outside* the presence of the jury during a voir dire conducted by the State to establish a basis for offering the testimony a second time. Earlier in the State's direct examination of Smith, the State had asked him whether the Dallas County Residential Center was a penal institution. Defense counsel had immediately objected on hearsay grounds. The court had overruled the objection and permitted the witness to answer that the facility was a penal institution. The voir dire testimony cited by the majority came later. Later still, the State asked Smith the same question again, this time in the jury's presence. For yet a third time, the court overruled defense counsel's timely hearsay objection and permitted the witness to answer. What more would the majority have counsel do to preserve the objection?

The majority also reasons that Smith had earlier testified to all of the operational

elements of the definition of a penal institution, so that appellant's objection to the "magic words" was ineffective. All of the testimony cited by the majority as proof of the operational elements of the definition is proof only of Roy's confinement in a halfway house. Roy did not object to the testimony of the witness that the halfway house was Roy's assigned unit of confinement. His hearsay objection was to Smith's testimony that the halfway house is a penal institution.

### 2. Judicial Notice Cannot Provide the Missing Evidence

The majority next argues that the admission of the hearsay testimony is harmless since the trial court could have taken judicial notice of the status of the Center as a penal institution. The majority searches for appellate solace on grounds the State overlooked at trial. To do so it relies on *McWilliams v. State*, 719 S.W.2d 380 (Tex. App.—Houston [1st Dist.] 1986), *rev'd on other grounds*, 782 S.W.2d 871 (Tex.Crim. App.1990), and *Legg v. State*, 594 S.W.2d 429 (Tex.Crim.App.1980). Far from supporting the majority's position, these two cases demonstrate that the foundation with which it seeks to buttress its conclusion is illusory.

Both *Legg* and *McWilliams* identify two proofs which the State must present at trial before a court may conclude that a facility has been designated as a penal institution: (1) the facility is one authorized by law; and (2) facilities so authorized are places designated for the confinement of persons arrested for, charged with, or convicted of offenses. Legg had been confined in the Taylor County Jail. The *Legg* court took judicial notice of two statutes as proof of the two premises in order to conclude that Legg had been confined in a penal institution. First, the *Legg* court took judicial notice of article 5115: "[t]he Commissioners Court shall provide safe and suitable jails for the respective counties...." TEX.REV.CIV.STAT.ANN. art. 5115 (Vernon 1964). That statute alone was not enough, however; the fact that the statute authorized the Commissioners Court to provide jails did not necessarily mean that the

Taylor County Jail was a penal institution. To reach that conclusion the *Legg* court had to judicially notice a second statute. That statute defined county jails as "any jail, lockup, or other facility that is operated by or for a county for the confinement of persons accused or convicted of an offense." TEX.REV.CIV.STAT.ANN. art. 5115.1, § 2(3) (Vernon 1964). The *Legg* court thus judicially noticed both proofs: (1) county jails were authorized by article 5115; and (2) county jails are penal institutions pursuant to article 5115.1. It could therefore conclude, upon proof that Legg had been confined in the Taylor County Jail, that Legg had been confined in a penal institution.

Similarly, McWilliams had been confined in a halfway house. Article 6166x-4 equates to the provisions of article 5115 in *Legg:* the Texas Department of Corrections and the Board of Pardons and Paroles may *by law* jointly designate halfway houses, just as County Commissioners may establish county jails. However, there is no provision in article 6166x-4 which equates to article 5115.1. The statute does not define halfway houses as places for the confinement of persons arrested for, charged with, or convicted of offenses. Article 6166x-4 therefore did not provide the second proof, i.e., that halfway houses are places designated for the confinement of persons arrested for, charged with, or convicted of offenses.

Therefore, the *McWilliams* court took judicial notice of article 6166x-4 as proof that halfway houses are authorized by law. It then relied on the testimony of a Texas Department of Corrections officer as proof of what the *Legg* court had found was proved by article 5115.1: that halfway houses are designated by the Texas Department of Corrections as places for the confinement of persons arrested, or charged with, or convicted of offenses. *McWilliams*, 719 S.W.2d at 383. Instead of judicially noticing both proofs as the *Legg* court had, the *McWilliams* court took judicial notice of the first proof: (1) that the facility where McWilliams was confined was a duly-designated halfway house, and

admitted testimonial evidence of the second proof: (2) that the Texas Department of Corrections had designated halfway houses as places for the confinement of persons arrested for, charged with, or convicted of offenses. Thus, the *McWilliams* court could also conclude that McWilliams had been confined in a penal institution. It is important to note that the judicial notice of article 6166x–4 *alone* did not provide the necessary evidence in *McWilliams* that the halfway house was a penal institution. The statute only provided half of the proof. The balance of the proof was provided by an employee of the Texas Department of Corrections. Thus, neither *Legg* nor *McWilliams* countenance the leap the majority seeks to make today.

### 3. Smith's Statement was Hearsay

The majority next seeks to equate Smith's testimony with the testimony of the Texas Department of Corrections employee in *McWilliams.* At the time appellant left the Center, designation of a facility as a penal institution was a function of the Texas Department of Corrections. TEX. REV.CIV.STAT.ANN. art. 6166g (Vernon 1970), *repealed by* Act of May 26, 1989, 71st Leg., R.S., ch. 212, § 3.03, 1989 Tex.Gen.Laws 918, 968–69. Legislation passed at the same session as the repeal of article 6166g created an umbrella agency under which both the Board of Pardons and Paroles and the Texas Department of Corrections now function. Act of June 15, 1989, 71st Leg., R.S., ch. 785, §§ 1.19(a) and 1.20(a)(2), 1989 Tex.Gen.Laws 3471, 3475. However, prior to that legislation the two entities operated independently. An employee of one was not an employee of the other. While article 6166x–4 provided that the entities functioned jointly in assigning prisoners to halfway houses, it did not confer any authority on the Board of Pardons and Paroles to designate a halfway house as a penal institution. That authority remained with the Texas Department of Corrections.

Smith testified he was an employee of the Board of Pardons and Paroles. He was not an employee of the Texas Department of Corrections. The State offered his testimony to prove the truth of the matter asserted, i.e., to prove that the Center was a penal institution. Under rule 801 of the Texas Rules of Criminal Evidence, the declarant of the statement "the facility was a penal institution" is the Texas Department of Corrections, the only entity authorized by statute at the time to designate penal institutions. TEX.R.CRIM.EVID. 801.

Had the State offered the evidence through a representative of the Texas Department of Corrections, the assertion would not have been hearsay. However, an employee of the Texas Board of Pardons and Paroles, no matter how much contact he may have had with the Texas Department of Corrections in the performance of his duties at the Center, could only have acquired his knowledge of the designation through hearsay. The assertion is hornbook hearsay: "[E]vidence as to the purport of 'information received' by the witness, ... offered as proof of the facts asserted out of court, are properly classified as hearsay." MCCORMICK ON EVIDENCE § 249 at 735 (Cleary Rev., 3rd Ed.1984). The Texas Court of Criminal Appeals has stated the rule:

> [W]here there is an inescapable conclusion that a piece of evidence is being offered to prove statements made outside the courtroom, a party may not circumvent the hearsay prohibition through artful questioning designed to elicit hearsay indirectly. In short, "statement" as defined in Tex.R.Civ.Evid. 801(a) (now see Tex.R.Crim.Evid. 801(a)) necessarily includes *proof* of the statement whether the proof is direct or indirect.

*Schaffer v. State,* 777 S.W.2d 111, 114 (Tex.Crim.App.1989) (emphasis in original). The hearsay, as always, is enlightening— but inadmissible nonetheless.

The analysis performed at length by the majority shows only the witness's personal knowledge of the fact of appellant's *custody,* the first essential element of an escape offense, not the legal status of the facility as a *penal institution. See* TEX.R.CRIM. EVID. 602. The State did not demonstrate Smith's personal knowledge of the status of the Center as a penal institution.

Moreover, the State *could not* prove that halfway houses are places designated for the confinement of persons arrested for, charged with, or convicted of an offense through Smith or any employee of the Board of Pardons and Paroles, without first proving that the testimony could come in under a statute or some relevant exception to the hearsay rule. The statement was hearsay. Hearsay is inadmissible except as provided by statute or the rules of evidence. TEX.R.CRIM.EVID. 802. A defendant preserves error by raising a hearsay objection.

### 4. The Burden Did Not Shift To Roy

The most troublesome aspect of the majority's analysis is its assertion that the trial court's adverse ruling somehow shifted the burden to Roy to demonstrate that Smith's statement was hearsay in order to preserve the error. The burden is on the State to prove a hearsay statement's admissibility, not on the defendant to prove it is inadmissible. Hearsay is already inadmissible. Nothing more was required of appellant to preserve the trial court's error for review. *See Long v. State,* 800 S.W.2d 545, 548 (Tex.Crim.App.1990). The State could have proved up the assertion through a business records hearsay exception under rule 803 of the Texas Rules of Criminal Evidence, but it was not required to do so since the trial court ruled in its favor on appellant's hearsay objection. *See* TEX. R.CRIM.EVID. 803(8). The trial court erred by allowing the statement into evidence.

Further, to make the evidentiary leap that proof of custody in a halfway house equates to proof of custody in a penal institution, the majority ignores the meaning of the internal enhancement provided by section 38.07. The statute recognizes that an escape may occur from a variety of custodial situations. A suspect may be in custody on the street somewhere, in the back of a squad car, even in the suspect's own home; essentially anywhere. However, the *place* a suspect escapes from enhances the violation to a felony *only* if the place is a penal institution.

The majority indulges in a commonplace but dangerous analytical error. The majority insists that because the State proved Roy was confined in a halfway house, it proved he was confined in a penal institution. Proof that appellant was in custody in a halfway house is no more proof that he was confined in a penal institution than proof that he was in custody in the back seat of a squad car would be. The majority's reasoning is akin to the childhood example used to demonstrate the nonsense created by a false syllogism: "All kangaroos are animals. Kangaroos hop. Therefore all animals hop." The majority has constructed an equally-fallacious syllogism: "Prisoners are confined in penal institutions. Article 6166x–4 authorizes confinement of prisoners in halfway houses. Therefore Roy was confined in a penal institution." The logical error the majority commits is to conclude that because a suspect may be legally confined in a halfway house, halfway houses are penal institutions. This flawed logic transforms a premise which the State must prove into the conclusion itself.

### HARMFUL ERROR

Once again, the State had to prove either of the two prongs of felony escape. Despite the majority's conclusion that the trial court's error in admitting the uncertified pen packets was harmful, only when the State fails to prove either prong do the trial errors become harmful. If the State had proved one prong, as the majority concluded, error in admission of evidence to prove the other prong is harmless. Because my disposition of points three and seven mean the State failed to properly prove either prong of felony escape, the errors in both are therefore harmful. I would reverse and remand.

Because points three, seven, and ten are dispositive of the appeal, I would not deem it necessary to discuss appellant's remaining points of error. I would reverse and remand for a new trial on guilt/innocence instead of only on punishment.

**548**

ORDER ON MOTION FOR REHEARING

KINKEADE, Justice.

The Court has before it the State's May 22, 1991 motion for rehearing, timely filed after this Court issued its new opinion and judgment on May 15, 1991. TEX.R.APP.P. 101. While the Supreme Court of Texas has expressly amended TEX.R.APP.P. 130(b) to provide that a court of appeals shall rule on any timely motion for rehearing notwithstanding a premature application for writ of error, *cf. OKC Corp. v. UPG, Inc.,* 795 S.W.2d 162 (Tex.1990), we find no corresponding amendment promulgated by the Texas Court of Criminal Appeals. Therefore, we conclude that appellant's petition for discretionary review has vested exclusive jurisdiction in the Texas Court of Criminal Appeals. *Cf. Doctors Hospital v. Fifth Court of Appeals,* 750 S.W.2d 177, 179 (Tex.1988); *Wadsworth Business Center v. Connell,* 775 S.W.2d 663, 666–67 (Tex.App.—Dallas 1989, writ denied). While we find the State's motion for rehearing meritorious, we conclude that granting it would interfere with the jurisdiction of the Texas Court of Criminal Appeals. Therefore, the State's motion for rehearing is OVERRULED.