**EUROPEAN CROSSROADS' SHOPPING CENTER, LTD., et al., Appellants,**

v.

**Harold CRISWELL, Appellee.**

No. 05–93–01771–CV.

Court of Appeals of Texas, Dallas.

Aug. 8, 1995.

Robert M. Greenberg, Legal Services, P.C., Dallas, Gary W. Sibley, Law Offices of Gary W. Sibley, P.C., Dallas, for Appellant.

Joe D. Gregory, Gregory & Gregory, Grapevine, for Appellees.

Before BAKER, BARBER and WHITHAM [1], JJ.

## OPINION

BAKER, Justice.

This is the second appeal of this case.[2] On the second trial, the jury found Criswell had performed the services agreed upon in the parties' contract. The jury also found thirty-five percent of Criswell's recovery as reasonable attorney's fees for Criswell's attorneys. The trial court entered judgment for the fee due under the contract, prejudgment interest at ten percent per year, and attorney's fees based on the jury's finding.

Crossroads contends there is no evidence or insufficient evidence to support the jury's answers to the questions submitted in the jury charge. Crossroads contends the trial court erred in overruling its objection to the transfer of the case from one district court to another. It contends the trial court erred in denying it leave to amend its pleadings. It contends the trial court erred in submitting a jury instruction on prevention of performance. Finally, it contends the trial court erred in awarding Criswell prejudgment interest at ten percent per year from September 17, 1981.

We conclude there is enough evidence to support the jury's answers to the questions submitted. We also conclude, with two exceptions, that the claims of trial error are either without merit or harmless. However, we hold the trial court erred in submitting the jury instruction excusing Criswell from performing if Crossroads prevented his performance under the contract. We hold this error was harmful. We also hold the trial court erred in awarding prejudgment interest at ten percent per year. The correct rate of prejudgment interest is six percent per year as provided by article 5069–1.03.[3] Accordingly, we reverse and remand the cause for a new trial.

## FACTUAL BACKGROUND

Criswell is a registered engineer and surveyor. Ginsberg was general partner for Crossroads, a limited partnership. Ginsberg and others formed Crossroads to build a shopping center. Crossroads hired Criswell in 1970 as a structural engineer for the center. After operating for several years, the center was a financial failure. In 1979, Ginsberg asked Criswell to help him prepare the center for sale. Ginsberg wanted to divide the center into condominium units.

In 1980, Criswell agreed to prepare the requested plans. Criswell drafted an agreement that stated:

I will compile and prepare all information necessary for real estate agents to show and sell the above property on a condominium basis; *i.e.* to be able to sell each individual building (Building # 1 through Building # 9) as a separate item with necessary information to form an association

---

1. The Honorable Warren Whitham, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

2. *See Criswell v. European Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945 (Tex.1990) (op. on reh'g).

3. Tex.Rev.Civ.Stat.Ann. art. 5069–1.03 (Vernon 1987).

to accommodate maintenance, taxes, necessary exterior utilities and any other community expenses; or as a whole project.

I will also prepare and have available any and all necessary information that a proposed owner or owners would deem pertinent or desirable and/or prepare the information that he may desire at his request.

For the above services, the European Crossroads will compensate to [sic] me at my office, presently in Suite # 141, 2829 W. Northwest Highway, Dallas, Texas, a fee of one percent (1%) of the total sales price of each building, buildings, or entire project at the time of closing.

Ginsberg signed the agreement for the center.

Criswell spent five months preparing data on the shopping center. At his own expense, Criswell prepared the data in a booklet and delivered several copies to Ginsberg. Ginsberg asked the center's mortgagee for approval to sell the center as condominium units. The mortgagee refused. Ginsberg relayed this information to Criswell. Criswell heard nothing from Ginsberg about payment for the booklet or his services. In 1981, Crossroads sold the entire shopping center under a contract for deed for $12,850,-000. Ten months later Criswell learned of the sale. Criswell requested his fee. Crossroads refused to pay Criswell's fee.

## PROCEDURAL BACKGROUND

### 1. The First Trial and Appeal

Criswell sued Ginsberg and Crossroads for breach of contract and attorney's fees. Criswell asserted the agreement was enforceable, whether Crossroads transferred the center as condominium units or as a whole project. Criswell claimed he provided information useful in the sale of the property. Criswell contended Crossroads could use the information he compiled either to sell the center as condominium units or as a whole project.

Ginsberg and Crossroads argued the agreement was unenforceable because Crossroads sold the center as a whole unit. They also asserted Criswell's data was useless because they did not sell the center as condo-

minium units. Neither party contended the contract was ambiguous.

After Criswell rested, the trial court granted Crossroads' motion for directed verdict and entered judgment for Crossroads. The trial court ruled the sale of the center as condominiums was a condition precedent to Criswell earning his fee. In an unpublished opinion, we affirmed the trial court's judgment. We held because the condition precedent did not occur, Criswell had no right to performance under the contract.

The Texas Supreme Court granted writ of error on Criswell's petition. The court interpreted the phrases "as a whole project" and "or entire project" as parallel expressions of alternate methods of selling the center. *Criswell v. European Crossroads Shopping Ctr., Ltd.,* 792 S.W.2d 945, 949 (Tex.1990) (op. on reh'g). The court held that the intent of the phrases was not to explain or modify the phrase "on a condominium basis." The court held the agreement did not require a sale of the shopping center as condominiums as condition precedent to Criswell's right to receive his fee. The court reversed our judgment and the trial court's judgment. The court remanded the cause to the trial court for a new trial. *See Criswell,* 792 S.W.2d at 949.

### 2. The Second Trial

The case was originally set for trial in the 193rd District Court. However, Judge Leonard E. Hoffman, Jr., senior judge of the 160th District Court, was sitting for the judge of the 193rd District Court. Judge Hoffman transferred this case from the 193rd District Court to the 101st District Court before the second trial began. The presiding judge of the 101st District Court conducted a jury trial for the parties. The trial judge submitted instructions and two questions to the jury. One of the instructions stated:

You are further instructed that if Harold Criswell was prevented from performing the details of his undertaking pursuant to Plaintiff's Exhibit 1 [the agreement] by the acts or omissions of a Defendant, then Harold Criswell is excused from performing the details of Plaintiff's Exhibit 1. As used herin [sic], the term "Defendant"

means R.M. Ginsberg, European Crossroads Shopping Center, Ltd., its partners, agents, servants and employees.

The two questions the trial court submitted stated:

*Question # 1*

Do you find from a preponderance of the evidence that Harold W. Criswell performed the agreed upon services as defined in Plaintiff's Exhibit No. 1?

*Question # 2*

From a preponderance of the evidence, what is the reasonable fee for the necessary services of Harold W. Criswell's attorneys in this case stated as a percentage of Harold W. Criswell's recovery?

The jury answered "yes" to question one and "35%" to question two. The trial court denied Crossroads' motion for judgment notwithstanding the verdict and granted Criswell's motion for judgment on the verdict. The trial court entered judgment for: (1) $128,500; (2) prejudgment interest at ten percent per year compounded daily from September 17, 1981, totaling $290,881.31; (3) attorney's fees of 35% amounting to $146,783.46; (4) court costs; and (5) postjudgment interest at ten percent per year.

## TRIAL ERRORS

### A. The Transfer Order

Crossroads contends the trial court erred in overruling its objection to the transfer of the case from the 193rd District Court to the 101st District Court. Crossroads contends the order was void because it did not follow local court rules.

#### 1. Applicable Law

█ District judges may exchange districts or hold court for each other when they consider it expedient. *See* TEX. CONST. art. V, § 11; TEX.R.CIV.P. 330(e); DALLAS (TEX.) CIV.DIST.CT.LOC.R. 1.1(f)(5); *Ex parte Lowery*, 518 S.W.2d 897, 901 (Tex.Civ.App.—Beaumont 1975, orig. proceeding).

█ The trial court has discretion to decide when to transfer a case. *See* TEX. CONST. art. V, § 11; TEX.R.CIV.P. 330(e); DALLAS (TEX.) CIV.DIST.CT.LOC.R. 1.1(f)(5);

*Akin v. Tipps*, 668 S.W.2d 432, 434 (Tex. App.—Dallas 1984, orig. proceeding); *Floyd v. State*, 488 S.W.2d 830, 832 (Tex.Crim.App. 1972).

█ The trial court may exchange or transfer a case on its own initiative. Exchange or transfer does not require a formal order. The minutes of the court do not need to show the reason for the exchange. *See Roy v. State*, 813 S.W.2d 532, 537 (Tex. App.—Dallas 1991, pet. ref'd); *Lowery*, 518 S.W.2d at 901; *Baldwin v. Leonard*, 110 S.W.2d 1160, 1161 (Tex.Civ.App.—Eastland 1937, writ dism'd). A litigant does not have a protected proprietary interest in having his case heard by a particular judge or a particular court. *Starnes v. Holloway*, 779 S.W.2d 86, 97 (Tex.App.—Dallas 1989, writ denied).

#### 2. Standard of Review

█ We use an abuse of discretion standard to review the trial court's decision to transfer a case, exchange benches, or hold court for each other. *Floyd*, 488 S.W.2d at 832. A trial court abuses its discretion when it does not follow guiding rules and principles and reaches an arbitrary and unreasonable decision. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992) (orig. proceeding); *Flores v. Fourth Court of Appeals*, 777 S.W.2d 38, 41–42 (Tex.1989) (orig. proceeding). On factual issues or other matters committed to the trial court's discretion, we may not substitute our judgment for that of the trial court's. *Walker*, 827 S.W.2d at 839. Even if we would decide the issue differently, we do not disturb the trial court's decision unless it is arbitrary and unreasonable. *Walker*, 827 S.W.2d at 840; *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985) (orig. proceeding).

█ However, we give less deference when we review the trial court's application of law. A trial court has no discretion to determine what the law is or to apply the law to the facts. *Walker*, 827 S.W.2d at 840. The trial court's clear failure to analyze or correctly apply the law is an abuse of discretion. *Walker*, 827 S.W.2d at 840.

### 3. Application of Law to the Facts

A senior judge of the 160th District Court sitting for the judge of the 193rd District Court signed an order transferring this case from the 193rd District Court to the 101st District Court. The order shows the transfer was a replacement for a case from the 101st District Court to the 193rd District Court. The senior judge signed this order on February 17, 1993.

The record shows Crossroads filed a motion for continuance in the 101st District Court on March 12, 1993. Crossroads filed its motion objecting to the transfer on the day the trial court called the case for trial on the merits. The only objection in the motion was that the transfer order violated Dallas Civil District Court Rule 1.1. Crossroads argued the order was void for that reason. However, Crossroads orally argued the order violated the Texas Government Code and was contrary to case law. Crossroads relied on *Akin v. Tipps* as authority for its claim the transfer order was void. *See Akin*, 668 S.W.2d at 432.

After argument by the parties, the trial court noted Crossroads filed a pleading in the 101st court on March 12. The trial court denied Crossroads' motion. The trial court denied Crossroads' request for an evidentiary hearing. The trial court did permit Crossroads to make a bill of exception.

At the bill of exception evidentiary hearing, the court coordinator for the 193rd District Court testified. She said when a judge recuses himself from a case in another court, the local administrative judge reassigns the case to another district court. She said in this case the 193rd District Court received a case from the 101st District Court because the judge of that court recused himself. She said in return, her court had to give the 101st District Court a similar case. The court coordinator of the 193rd District Court submitted several cases to her judge. Her judge decided to transfer this case to the 101st District Court.

Trial courts have broad discretion to exchange benches or transfer cases. *Akin*, 668 S.W.2d at 434; *Floyd*, 488 S.W.2d at 832. The trial judge has the discretion to make an exchange on his own initiative. The transfer does *not* require a *formal order*. The trial court's minutes need not reflect the reason for the exchange. *See Roy*, 813 S.W.2d at 537; *Lowery*, 518 S.W.2d at 901; *Baldwin*, 110 S.W.2d at 1161. Crossroads did not have a protected proprietary interest in a trial before a particular judge or court. *See Starnes*, 779 S.W.2d at 97. Based on the trial court's broad discretion and other applicable factors, the transfer order was not void because a judge other than the transferring judge signed it.

Crossroads misplaces its reliance on *Akin v. Tipps* to argue the transfer order is void. *Akin* is distinguishable from this case. In *Akin*, a visiting judge heard and rendered a decision on the merits of a case without an assignment to hear it. *See Akin*, 668 S.W.2d at 434. We conclude Crossroads has not shown an abuse of discretion by the transfer of this case from one court to the other. We overrule Crossroads' first point of error.

### B. The Motion for Leave to Amend Pleadings

Crossroads contends the trial court erred in denying it leave to amend its pleadings. Crossroads asked for a trial amendment. Crossroads wanted to plead the letter agreement was ambiguous, and it had terminated the agreement. The trial court denied Crossroads' request for a trial amendment.

### 1. Applicable Law

Parties may amend their pleadings only with the trial court's permission within seven days of a trial date or afterward. The trial court should permit the amendment unless the opposite party shows that filing the amendment operates as a surprise. *See* TEX. R.CIV.P. 63; *Clade v. Larsen*, 838 S.W.2d 277, 280 (Tex.App.—Dallas 1992, writ denied). The trial court may not refuse an amendment unless: (1) the opposing party presents evidence of surprise or prejudice; or (2) the amendment asserts a new cause of action or defense, and thus, is prejudicial on its face, and the opposing party objects to the amendment. *See Greenhalgh v. Service Lloyds Ins. Co.*, 787 S.W.2d 938, 939 (Tex. 1990); *Clade*, 838 S.W.2d at 280.

## 2. Standard of Review

▇▇ The party complaining of the trial court's refusal to consider an amended pleading has the burden to show an abuse of discretion. *Hardin v. Hardin*, 597 S.W.2d 347, 349 (Tex.1980); *Clade*, 838 S.W.2d at 280. We do not disturb the trial court's ruling unless the complaining party shows an abuse of discretion. *Hardin*, 597 S.W.2d at 349–50; *Clade*, 838 S.W.2d at 280.

## 3. Application of Law to the Facts

▇▇ This case had been pending for almost ten years when the trial court called the case for trial on the merits. The parties had previously tried the case and appealed it to this Court and to the Texas Supreme Court. Crossroads filed its motion for leave to add the ambiguity and termination claims on the day the second trial began.

On its first journey through the judicial system, neither party pleaded ambiguity, and Crossroads did not plead termination. *See Criswell v. European Crossroads' Shopping Ctr., Ltd.*, No. 05–87–01204–CV, slip op. at 7 (Tex.App.—Dallas, January 23, 1989),[4] (not designated for publication), *rev'd*, 792 S.W.2d 945 (Tex.1990) (op. on reh'g).[5] Crossroads did not plead ambiguity or termination during the four years between the first trial and the second trial. The parties did not discover any new evidence between the first trial and the second. Crossroads did not offer the amendment until the day of trial.

The trial court heard Crossroads' argument to allow the amendment. Criswell's counsel objected. Criswell contended Crossroads was trying to start the case again. Criswell contended Crossroads was trying to bring in parol evidence. Criswell argued that both this Court and the Texas Supreme Court held the agreement was not ambiguous. However, Criswell's counsel did not use the words "surprise" or "prejudice" when he made his objections.

Based on the record, we conclude Crossroads has not shown the trial court abused its discretion by denying the requested trial amendment. The case had been pending for almost ten years. In our view, the record shows Criswell's surprise when Crossroads attempted to plead ambiguity and termination. A pleading of ambiguity would require additional evidence. This trial amendment would have prejudiced Criswell. Additionally, Crossroads' attempt to plead termination raised a new defense and was prejudicial on its face. *Greenhalgh*, 787 S.W.2d at 939; *Clade*, 838 S.W.2d at 280. We overrule Crossroads' second point of error.

## C. The Jury Instruction

Crossroads contends the trial court erred in instructing the jury that Crossroads' prevention of Criswell's performance excused Criswell from performing. Crossroads objected the instruction was improper because Criswell did not plead prevention of performance. Crossroads objected the instruction was improper because it varied the parties' obligations under the agreement. Crossroads objected the instruction was improper because there was no evidence or insufficient evidence to support submission of the instruction.

## 1. Applicable Law

In all jury cases, the court shall submit such instructions and definitions to properly allow the jury to render a verdict. *See* TEX. R.CIV.P. 277. The court shall submit questions, instructions, and definitions raised by the pleadings and evidence. TEX.R.CIV.P. 278.

▇▇ For an instruction to be proper, it must: (1) assist the jury; (2) accurately state the law; and (3) find support in the pleadings and evidence. *See* TEX.R.CIV.P. 277, 278; *First State Bank & Trust Co. v. George*, 519 S.W.2d 198, 207 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.). An instruction that misstates the law or misleads the

---

**4.** We do not cite the opinion for precedential value, but to show neither party asserted ambiguity in the trial court or in the first appeal.

**5.** One member of the supreme court stated the agreement was not ambiguous, and no party contended that it was. *See Criswell*, 792 S.W.2d at 950 (Hecht, J. concurring on motion for reh'g).

jury is improper. *Jackson v. Fontaine's Clinics, Inc.,* 499 S.W.2d 87, 90 (Tex.1973).

■■■■ Trial courts should refuse to submit unnecessary instructions even if they are legally correct statements. *Samsel v. Diaz,* 659 S.W.2d 143, 144 (Tex.App.—Corpus Christi 1983, no writ). Submitting unnecessary instructions may require reversal if the instructions are prejudicial. *Boaz v. White's Auto Stores,* 141 Tex. 366, 172 S.W.2d 481, 484 (1943). However, the trial court has broad discretion to determine whether and how to submit jury instructions. *Jobe v. Penske Truck Leasing Corp.,* 882 S.W.2d 447, 451 (Tex.App.—Dallas 1994, no writ); *K–Mart Corp. Store No. 7441 v. Trotti,* 677 S.W.2d 632, 636 (Tex.App.—Houston [1st Dist.] 1984), *writ denied per curiam,* 686 S.W.2d 593 (Tex.1985). A trial court has more discretion when it submits instructions than when it submits jury questions. *Perez v. Weingarten Realty Investors,* 881 S.W.2d 490, 496 (Tex.App.—San Antonio 1994, writ denied).

**2. Standard of Review**

■■■ We use an abuse of discretion standard to review the trial court's submission of instructions and jury questions. TEX. R.CIV.P. 277; *Green Tree Acceptance, Inc. v. Combs,* 745 S.W.2d 87, 89 (Tex.App.—San Antonio 1988, writ denied). In deciding whether the trial court abused its discretion when it submitted an instruction, we may not substitute our judgment for the trial court's judgment. We may only decide whether the trial court's action was arbitrary or unreasonable. *Landry v. Travelers Ins. Co.,* 458 S.W.2d 649, 651 (Tex.1970); *Trotti,* 677 S.W.2d at 636.

■■■ If the trial court abuses its discretion when it submits an instruction to the jury, we do not reverse unless harmful error results. *Lone Star Gas Co. v. Lemond,* 897 S.W.2d 755, 756–57 (Tex.1995); *Boatland of Houston, Inc. v. Bailey,* 609 S.W.2d 743, 749–50 (Tex.1980). For harmful error to result, the error must amount to a denial of a party's rights that was calculated to cause, and probably did cause, rendition of an improper judgment. TEX.R.APP.P. 81(b)(1); *Hedley Feedlot, Inc. v. Weatherly Trust,* 855 S.W.2d

826, 842 (Tex.App.—Amarillo 1993, writ denied); *see also Boatland,* 609 S.W.2d at 749. We determine harm by examining the entire record. *Boatland,* 609 S.W.2d at 750; *Hedley Feedlot,* 855 S.W.2d at 842.

**3. Application of Law to the Facts**

■■■ The trial court instructed the jury that, if Crossroads' acts or omissions prevented Criswell from performing under the agreement, then Criswell was excused from performing the details of the agreement. Crossroads objected that no pleadings or evidence existed to support submission of that instruction. Crossroads also complained the instruction changed the terms of the agreement and added extraneous conditions to the agreement.

The record reflects Criswell tried to file a trial amendment to cover the proposed instruction. However, the trial court denied leave to amend. Therefore, Criswell's live pleading could not support the submission of the instruction. Accordingly, Crossroads' objection of no pleadings to support the instruction was a valid objection. Additionally, the instruction added conditions not provided in the agreement. We conclude the trial court erred when it overruled these objections to the instruction and submitted it to the jury.

Because we conclude the trial court erred when it submitted the instruction, we now determine whether the submission resulted in harmful error. *See* TEX.R.APP.P. 81(b)(1); *Boatland,* 609 S.W.2d at 749; *Hedley Feedlot,* 855 S.W.2d at 842. We conclude the submission resulted in harm to Crossroads. We have examined the entire record to reach this conclusion. *See Boatland,* 609 S.W.2d at 750; *Hedley Feedlot,* 855 S.W.2d at 842.

Criswell argued he did all that was necessary under the agreement for Crossroads to sell the center. Criswell's evidence showed he gave Ginsberg an information booklet. Neither Ginsberg nor any other Crossroads employee asked Criswell for additional information. However, Crossroads contends Criswell's efforts were not enough to permit a condominium sale. Crossroads put on an expert witness who testified to what Criswell

should have done. Thus, the central issue of the case was whether Criswell's performance met the terms of the agreement.

The agreement requires Crossroads to pay Criswell when Crossroads sold the center as condominiums or as a whole. The trial court's instruction permitted the jury to consider Crossroads' failure to request additional information as an excuse for Criswell's nonperformance, if any. This instruction imposed duties on Crossroads that did not exist under the agreement. We conclude the permitted instruction confused and misled the jury. We conclude the submission of the instruction was a denial of Crossroads' rights. We conclude the instruction caused the jury to reach an improper verdict and rendition of an improper judgment. *See* TEX. R.APP.P. 81(b)(1). We sustain Crossroads' point of error number four.

### D. Prejudgment Interest

Crossroads contends the trial court erred when it awarded Criswell's prejudgment interest at ten percent per year compounded daily from September 17, 1981. Crossroads argues the ten percent rate is improper as a matter of law. Crossroads argues there is no evidence showing the date prejudgment interest begins. Crossroads contends the proper prejudgment interest rate is six percent per year beginning thirty days after the time when any sum was due.

### 1. Applicable Law

■ When the parties do not agree on an interest rate, six percent per annum is the interest rate on all accounts and contracts with ascertainable sums payable. The interest accrues thirty days after the time the amount stated in the contract is due and payable. *See* TEX.REV.CIV.STAT.ANN. art. 5069–1.03 (Vernon 1987).

A contract that provides conditions upon which liability depends and a way to determine the amount payable with reasonable certainty is a contract within the meaning of article 5069–1.03. *See Perry Roofing Co. v. Olcott,* 744 S.W.2d 929, 930 (Tex.1988); *Dolenz v. American Gen. Fire & Casualty Co.,* 798 S.W.2d 862, 864 (Tex.App.—Dallas 1990, writ denied).

### 2. Standard of Review

■ We give limited deference to a trial court's application of law to the facts. *Walker,* 827 S.W.2d at 840; *McLendon v. McLendon,* 862 S.W.2d 662, 675 (Tex.App.—Dallas 1993, writ denied). The trial court's failure to analyze or apply the law correctly is an abuse of discretion. *Walker,* 827 S.W.2d at 840; *McLendon,* 862 S.W.2d at 675. We apply the abuse of discretion standard of review to the trial court's prejudgment interest award.

### 3. Application of Law to the Facts

■ The agreement does not state an interest rate. The agreement provides Crossroads would pay Criswell one percent of the purchase price when Crossroads sells the property. We conclude the agreement provides conditions upon which liability depends. The agreement fixes a way to determine the sum payable with reasonable certainty. We hold article 5069–1.03 applies. *See Perry Roofing Co.,* 744 S.W.2d at 930; *Dolenz,* 798 S.W.2d at 864. *But see Sage Street Assocs. v. Northdale Constr. Co.,* 809 S.W.2d 775, 778 (Tex.App.—Houston [14th Dist.] 1991), *aff'd in part & rev'd in part on other grounds,* 863 S.W.2d 438 (Tex.1993).

■ Crossroads also argues there was no evidence or insufficient evidence of the date that prejudgment interest should begin. Crossroads argues its agreement with Criswell provided for payment of the one percent fee at closing. Crossroads argues that, because it conveyed the property to the buyer by a contract for deed, there was no specific closing date. Crossroads argues the evidence does not provide the date the one percent fee is due and payable. We disagree.

The supreme court held Crossroads' transfer of the center to the buyer by a contract for deed was a sale as contemplated by the letter agreement. The evidence shows Crossroads' buyer signed the agreement September 17, 1981. We conclude this evidence provides the ascertainable date to calculate the thirty days from the date the sum was due and payable. Accordingly, we sus-

tain Crossroads' point of error number six insofar as it complains the trial court erred in assessing interest at ten percent per year compounded daily. We overrule the point of error insofar as it complains there was no evidence or insufficient evidence to furnish a date for the beginning of the imposition of interest.

## EVIDENTIARY ISSUES

In points of error three, five, seven, and eight, Crossroads contends the trial court erred in not disregarding the jury's answer to the two questions submitted. Crossroads also complains the trial court erred in denying its motion for judgment notwithstanding the verdict and motion for new trial. Within these points of error, Crossroads also contends there was no evidence or insufficient evidence for the jury to find:

1. Criswell performed under the agreement;
2. Crossroads owed Criswell $128,500;
3. Thirty-five percent of Criswell's recovery was a reasonable fee for Criswell's attorney; and
4. A reasonable fee of thirty-five percent because the jury's answer to question one was not supported by evidence and question two on attorney's fees was conditioned upon an affirmative answer to question one.

## APPLICABLE LAW

### A. Standards of Review

#### 1. No Evidence

No evidence points of error are questions of law. *Tomlinson v. Jones,* 677 S.W.2d 490, 492 (Tex.1984); *McLendon,* 862 S.W.2d at 669. On appeal, we consider only the evidence and inferences that support the jury's findings. We disregard all evidence and inferences that do not support the jury's findings. *First Baptist Church v. Bexar County Appraisal Review Board,* 833 S.W.2d 108, 111 (Tex.1992); *McLendon,* 862 S.W.2d at 669.

We sustain a no evidence point only when the record discloses: (1) a complete absence of vital factual evidence; (2) the rules of law or evidence bar consideration of the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively shows the opposite of a vital fact. *Anderson v. City of Seven Points,* 806 S.W.2d 791, 795 n. 3 (Tex.1991); *McLendon,* 862 S.W.2d at 669.

#### 2. Sufficiency of Evidence

In reviewing an insufficient evidence point, we review all the evidence in the record, including any evidence contrary to the judgment. *Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989); *McLendon,* 862 S.W.2d at 669. We set aside the verdict only if the evidence standing alone is too weak to support the jury's findings, or if the jury's answers are so against the overwhelming weight of the evidence they are manifestly unjust and clearly wrong. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965); *McLendon,* 862 S.W.2d at 669.

The jury is the fact finder and decides fact issues by a preponderance of the evidence. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *McLendon,* 862 S.W.2d at 669. We do not pass upon the witnesses' credibility. We do not substitute our judgment for the fact finder's, even if there is conflicting evidence that supports a different judgment. *McLendon,* 862 S.W.2d at 669; *Harco Nat'l Ins. Co. v. Villanueva,* 765 S.W.2d 809, 810 (Tex.App.—Dallas 1988, writ denied).

When an appellant raises both no evidence and insufficient evidence points of error, we rule on the no evidence point first. *Glover v. Texas Gen. Indem. Co.,* 619 S.W.2d 400, 401 (Tex.1981); *McLendon,* 862 S.W.2d at 669.

### B. Facts Uncontradicted or Conclusively Proven

The trial court need not submit jury questions on undisputed facts. Tex.R.Civ.P. 272; *Sullivan v. Barnett,* 471 S.W.2d 39, 44 (Tex.1971); *St. Paul Ins. Co. v. Rakkar,* 838 S.W.2d 622, 629 (Tex.App.—Dallas 1992, writ denied). This rule applies even if pleadings controvert the issue. *Commercial Ins. Co. v. Smith,* 596 S.W.2d 661, 664 (Tex.Civ.App.— Fort Worth 1980, writ ref'd n.r.e.).

When a party conclusively proves a vital fact or does not contradict a vital fact, its effect is a question of law and there is no issue for the jury. *State Farm Lloyds, Inc. v. Polasek*, 847 S.W.2d 279, 284 (Tex.App.—San Antonio 1992, writ denied). This rule applies to damage questions. *Transit Enters. Inc. v. Addicks Tire & Auto Supply, Inc.*, 725 S.W.2d 459, 462 (Tex.App.—Houston [1st Dist.] 1987, no writ); *Bellefonte Underwriters Ins. Co. v. Brown*, 663 S.W.2d 562, 572 (Tex.App.—Houston [14th Dist.] 1983), *aff'd in part & rev'd in part on other grounds*, 704 S.W.2d 742 (Tex.1986).

### C. Attorney's Fees

In general, a litigant may recover attorney's fees against his adversary only if authorized by contract or statute. *City of Dallas v. Arnett*, 762 S.W.2d 942, 951 (Tex. App.—Dallas 1988, writ denied). Texas law allows the recovery of attorney's fees from the party who breaches a contract. *See* TEX. CIV.PRAC. & REM.CODE ANN. § 38.001(8) (Vernon 1986). This section allows an award of reasonable attorney's fees. TEX.CIV.PRAC. & REM.CODE ANN. § 38.001 (Vernon 1986).

Under section 38.001, testimony that a contingent fee agreement is reasonable and customary will sustain an award based on that fee agreement. *Kerrville HRH, Inc. v. City of Kerrville*, 803 S.W.2d 377, 388 (Tex. App.—San Antonio 1990, writ denied); *Arnett*, 762 S.W.2d at 957; *Texas Gen. Indem. Co. v. Speakman*, 736 S.W.2d 874, 884–86 (Tex.App.—Dallas 1987, no writ).

### APPLICATION OF LAW TO THE FACTS

### A. Criswell's Performance Under the Agreement

#### 1. No Evidence

Crossroads asserts there was no evidence to support the jury finding that Criswell performed under the agreement. Crossroads argues the evidence showed Criswell did not prepare the necessary information for real estate agents to show and sell the property as condominiums.

Criswell is a structural and civil engineer and a licensed surveyor. Criswell did the original structural engineering for the construction of the center. Criswell and Ginsberg entered into an agreement in which Criswell agreed to compile and prepare all information necessary for real estate agents to show and sell the property on a condominium basis or as a whole project. Criswell spent five months compiling information.

To prepare some of this information, Criswell relied on structural and lease drawings in his possession. He visited several architects who had worked on the leasing plans. He used his structural engineering drawings to calculate square footage. In making these calculations, he used the physical location of the walls and his own knowledge of the center's columns and partitions. Criswell also gave Ginsberg sample surveys of what he could provide Ginsberg once he knew how Ginsberg would sell the buildings.

Criswell got the rent rolls from the center's secretary. The rent rolls included information about lease records, square footage of the center, maintenance, amount of rent, and utilities. Criswell used the rent rolls to show the occupancy of the center, the leasing price, and the vacancy rate.

Criswell gave Ginsberg this information in a booklet. Criswell incurred expenses in preparing and printing the booklet and copies. When Criswell gave the booklet to Ginsberg, Criswell told Ginsberg that this was as much as he could do with the information he had. Criswell told Ginsberg he was willing to do anything else necessary to sell the building. After Criswell gave Ginsberg the booklet, neither Ginsberg nor anyone else gave Criswell any additional information required to sell the property. Neither Ginsberg nor any prospective buyer asked for any additional information on converting the property into condominiums.

From the evidence presented, the jury could have determined that Criswell performed under the agreement. We conclude there is some evidence to support the jury's finding that Criswell performed under the agreement.

## 2. Insufficient Evidence

■■■ In our analysis of the no evidence point, we reviewed the evidence to support the jury's finding. We now review all the evidence, including that which is contrary to the verdict. Crossroads presented the testimony of a real estate expert. The expert testified that Criswell did not compile and prepare all the information necessary for a real estate agent to show and sell the property on a condominium basis. The expert testified that Criswell's report should have also included: (1) a property survey; (2) the size of the parking area; (3) the number of parking spaces; (4) a zoning statement; (5) a statement of allowable uses; (6) the total land area; (7) a provision for the calculation of common area and land area; (8) metes and bounds for buildings three through nine; (9) photographs of the buildings; (10) an aerial photograph of the property; (11) a sufficient map of the area; (12) demographic information; (13) the price for the entire property and each building; (14) expense information; (15) information on the type of construction especially roofs, exterior walls, parking, elevators, and heating and air conditioning for each building; (16) utility meter information; (17) date of construction; (18) project overview and commentary; (19) neighborhood analysis; (20) information on payment of expenses and additional rent by tenants; (21) mortgage information; (22) income and expense for the entire project and each building; (23) lease synopses containing a commentary on each tenant; (24) title information; (25) joint use and maintenance agreement; (26) information on easements; (27) owners' association agreement; (28) information on comparable properties including lease rates, occupancy, and prices; and (29) complete rent roll.

Criswell said Ginsberg did not tell him which areas would be common areas or fee simple areas. Criswell said no one told him where to place the survey lines for any of the buildings. Criswell said Ginsberg did not tell him the parking requirements he wanted, because different land uses have different parking requirements. Neither Ginsberg nor anyone else told Criswell how the prospective buyer would use each building. Af-

ter Criswell prepared the booklet, no one else asked him to prepare any additional information or provide additional services.

A dispute existed about whether Criswell performed under the contract. Although we consider all the evidence, we are not a fact finder. We do not pass on the witnesses' credibility. We do not substitute our judgment for the jury, even if there is conflicting evidence that supports a different conclusion. *See McLendon,* 862 S.W.2d at 669; *Harco Nat'l Ins. Co.,* 765 S.W.2d at 810. We conclude the jury's finding is not so against the overwhelming weight of the evidence that it is manifestly unjust and clearly wrong. We overrule Crossroads' third point of error.

## B. The Amount Owed Under the Contract

■■■ In its fifth point of error, Crossroads contends the trial court erred in granting Criswell judgment for $128,500. Crossroads argues there was no jury finding on the amount of damages. Crossroads argues there was no evidence or insufficient evidence to support the amount. We disagree.

The agreement provides Crossroads will pay Criswell a fee of one percent of the total sale price of each building, buildings, or the entire project at closing. The evidence shows the buildings sold for $12,850,000. There was no dispute about either the fee percentage or the sale price. The trial court could calculate Criswell's fee. The trial court did not need to submit a question about the fee because it was an undisputed fact. *See* TEX.R.CIV.P. 272; *Sullivan,* 471 S.W.2d at 44; *St. Paul Ins. Co.,* 838 S.W.2d at 629. We overrule Crossroads' fifth point of error.

## C. Attorney's Fees

■■■ In its seventh point of error, Crossroads contends the trial court submitted an improper question to the jury when it asked the jury to determine a reasonable attorney's fee stated as a percentage of Criswell's recovery. Crossroads argues there was no evidence or insufficient evidence to support the jury's finding of thirty-five percent. We disagree.

Criswell's attorney testified he had a thirty-five percent contingency fee agreement with Criswell. Criswell's attorney testified that a thirty-five percent contingency fee is customary and reasonable in Dallas County. Under section 38.001, the testimony of Criswell's attorney that the contingency fee was customary and reasonable will sustain the jury's award of thirty-five percent. *See Kerrville HRH*, 803 S.W.2d at 388; *Arnett*, 762 S.W.2d at 957; *Texas Gen. Indem. Co.*, 736 S.W.2d at 884–86. The trial court submitted a proper question. We overrule Crossroads' seventh point of error.

In its eighth point of error, Crossroads argues that because there was no evidence or insufficient evidence to support the jury's "yes" answer to the question about whether Criswell performed under the agreement, it was improper for the jury to answer the attorney's fee question. Because there was some evidence and sufficient evidence to support the jury's finding that Criswell performed under the agreement, it was not improper for the jury to answer the attorney's fee question. We overrule Crossroads' eighth point of error.

## SUMMARY

### A. Trial Errors

We hold that the trial court did not abuse its discretion in overruling Crossroads' objection to the transfer of the case from the 193rd District Court to the 101st District Court. We hold the trial court did not abuse its discretion in refusing to allow Crossroads to amend its pleading to allege the agreement was ambiguous and to add termination as an affirmative defense.

However, we hold the trial court abused its discretion in submitting the prevention of performance instruction to the jury in the charge. We hold submitting the instruction was harmful to Crossroads because Criswell's agreement with Crossroads did not require any performance by Crossroads other than payment of the fee when Crossroads sold the center. We also hold the trial court abused its discretion in awarding Criswell prejudgment interest at ten percent per year compounded daily. We hold the correct rate of prejudgment interest is six percent per year beginning thirty days after the time any amount found due under the contract is due and payable.

### B. Evidentiary Issues

We hold there was sufficient evidence to support the jury's finding that Criswell performed under the agreement with Crossroads. We hold that, because the amount of the fee and the sale price were undisputed, the trial court could calculate Criswell's fee without submitting a question about the amount to the jury. We hold there was sufficient evidence to support the attorney's fees the jury awarded to Criswell's attorneys, and it was proper for the jury to answer the attorney's fee question.

Based on our disposition of Crossroads' points of error four and six, we reverse the trial court's judgment and remand the cause to the trial court for a new trial.