02-10-295-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00295-CV

 

 


 
 
 Sabri Salem
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Jawhar Asi, Mervat Asi, and JS Transport, Inc.
 
 
  
 
 
  
 APPELLEES
 
 


 

 

----------

 

FROM THE 17th
District Court OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

         
Appellant Sabri Salem appeals the trial court’s order awarding Jawhar Asi,
Mervat Asi, and JS Transport, Inc. (collectively, Asi) damages, attorney’s
fees, and prejudgment interest.  We will affirm the trial court’s
judgment.

Background
Facts

         
Salem and Asi owned and operated JS Transport, Inc, a trucking company. 
There was no written contract between the parties, but they both agreed that
they ran their company as a partnership.  In June 2008, Asi discovered
that Salem had “diverted payments and compensation for loads transported by JS
Transport to his own benefit,” and used JS Transport’s credit for personal
expenses.  He also claimed that Salem diverted customers from JS Transport
to Salem’s own business.

         
Asi sued Salem in 2008 for, among other things, breaching the parties’
partnership agreement, and sought damages and injunctive relief.  Salem
countersued Asi for, among other claims, breach of contract, fraud, conversion,
and he sought an accounting of JS Transport.  Salem retained counsel, but
in May 2009, his counsel withdrew.  Salem elected to represent himself.

         
At trial, Salem requested that Jamal Qaddura be appointed as his court
interpreter.  Asi objected because Qaddura was not a licensed court
interpreter.  Salem told the court that if the court was not going to appoint
Qaddura as his interpreter, then he was “ready to proceed” without an
interpreter.  The record reveals that Salem showed little knowledge of
trial procedures.  After the lunch break, Salem repeated his request for
an interpreter and also asked the court for a continuance so he could hire a
lawyer.  Qaddura testified that he believed he could be appointed as
Salem’s court interpreter under section 57.002 of the government code, which
allows an unlicensed translator to serve when there is no licensed translator
of that language within seventy-five miles.  See Tex. Gov’t Code.
Ann. § 57.002(d) (Vernon Supp. 2010).[2]  Salem offered no
evidence that there were no licensed Arabic interpreters within seventy-five
miles.  The trial court denied Salem’s requests.

         
After hearing the evidence, the trial court issued judgment in favor of JS
Transport for $8,906.96, plus $605.12 in prejudgment interest, and in favor of
Jawhar and Mervat Asi for $62,444.32 plus $4,243.28 in prejudgment interest,
and awarded them attorney’s fees.  The trial court also ordered that Salem
take nothing against the defendants for his counterclaims.  This appeal
followed.

Discussion

Issue
1:    Appointing an interpreter

In
his first issue, Salem argues that the trial court did not have the discretion
to refuse Salem’s request for an interpreter, or alternatively, that the trial
court abused its discretion by denying his request.

A.   
The appointment of an interpreter is discretionary

         
Section 57.002(a) of the government code states, “A court shall appoint a
certified court interpreter or a licensed court interpreter if a motion for the
appointment of an interpreter is filed by a party or requested by a witness in
a civil or criminal proceeding in the court.”  Tex. Gov’t Code. Ann.
§ 57.002(a).  Salem argues that because he was a party and a witness
and he requested an interpreter, he should have been granted one.

The
Attorney General has construed section 57.002 to require the appointment of a licensed
interpreter whenever a court appoints an interpreter, but that the statute does
not require the court to appoint an interpreter every time a motion is filed or
a request made.  Tex. Att’y Gen. Op. No. JC-0584 (2002).  As the
Attorney General has said, “[I]t would not be reasonable to construe section
57.002 to require a court to grant every motion or request for an
interpreter.”  Id.  The Attorney General opined that the
statute contains the conditional clause “if a motion for the appointment of an interpreter
is filed by a party or requested by a witness,” and reasoned that the
conditional clause “indicates that the legislature intended for courts to have
discretion to determine whether the party or witness requires an
interpreter.”  Id.  With regard to a request for an
interpreter as a witness, the Attorney General has construed the use of “shall”
in the statute to mean that when a court decides to appoint an interpreter, the
interpreter that it appoints must be licensed or certified.  Id. 
 “Licensed court interpreter” is defined as “an individual licensed under
Subchapter C by the Texas Commission of Licensing and Regulation to interpret
court proceedings for an individual who can hear but who does not comprehend
English or communicate in English.”  Tex. Gov’t Code. Ann. § 57.001(5)
(Vernon Supp. 2010).

While
recognizing that the Attorney General’s opinion may be persuasive but not
controlling, see Holmes v. Morales, 924 S.W.2d 920, 924 (Tex.
1996), we agree with the reasoning expressed in the conclusion reached in the
opinion.  It would be an absurd result to hold that a trial court has a
mandatory duty to appoint a licensed interpreter whenever an interpreter is
requested.  See Barshop v. Medina Cnty. Underground Water
Conservation Dist., 925 S.W.2d 618, 629 (Tex. 1996) (“Courts should not
read a statute to create . . . an absurd result.”).  The trial court may
grant or deny a motion or request for an interpreter based on the trial court’s
assessment of the ability of the party or witness to communicate in English.

The
statute is clear that as a party to a case, the court is only required to
consider appointing an interpreter “if a motion for the appointment of an
interpreter is filed.”  Tex. Gov’t Code Ann. § 57.002(a). 
The use of the word “filed” indicates that section 57.002 “appears to
contemplate written motions.”  See Tex. Att’y Gen. Op. No. JC-0584. 
While “nothing precludes a court from granting a party’s oral motion or request
for appointment of an interpreter, or from appointing an interpreter on its own
motion,” in neither case is it required by the statute to do so.  See
id.

Salem
did not file a written motion requesting an interpreter.  Since there is
no statutory mandate that the court grant a party’s oral motion for an
interpreter, the decision to appoint an interpreter to Salem as a party was
discretionary.  In considering Salem’s oral motion to appoint an
interpreter for him as a witness, the trial court determined that Salem
adequately understood the English language and that he could competently
communicate in English.  The trial court has the discretion under section
57.002 to make that decision.  Furthermore, the only possible interpreter
proffered, Qaddura, testified that he was not licensed by the Texas Commission
of Licensing and Regulation.  Thus, even if the court were required to
appoint an interpreter, it could not have appointed Qaddura.

B.    The trial court did not
abuse its discretion by denying Salem’s oral motion for an interpreter

To
determine whether a trial court abused its discretion, we must decide whether
the trial court acted without reference to any guiding rules or principles; in
other words, we must decide whether the act was arbitrary or
unreasonable.  Low v. Henry, 221 S.W.3d 609, 614 (Tex.
2007); Cire v. Cummings, 134 S.W.3d 835, 838–39 (Tex. 2004).  An
appellate court cannot conclude that a trial court abused its discretion merely
because the appellate court would have ruled differently in the same
circumstances.  E.I. du Pont de Nemours & Co. v. Robinson, 923
S.W.2d 549, 558 (Tex. 1995); see also Low, 221 S.W.3d at 620.

         
On appeal, Salem argues that his fluency in English was so lacking that the
trial court’s denial of his request for an interpreter was “akin to denying him
the assistance of needed eyeglasses for reading, a hearing aid for hearing, or
sufficient light to read.”  However, Salem repeatedly told the trial court
that he understood what was being said.  It is apparent from the record
that his difficulty, and the reason for his request for an interpreter, was
that he did not understand the meaning and significance of the legal jargon
used by the court and opposing counsel.

         
When the trial court heard Salem’s first request for an interpreter, Salem told
the trial court, “I can present myself.  If I don’t have a translator, if
the court isn’t giving translator to me, I’m ready to proceed.”  The trial
court noted, “I know that we were able to talk and I could understand you in
the pretrial.  I’m having a little bit harder time today, it seems like,
but in the pretrial, I didn’t have any difficulty understanding you.  But
you think you can proceed without a translator?”  Salem answered, “Yes,
ma’am, I can.”  The trial court asked him again, “Then do you have any
objections to proceeding by yourself and us allowing the translator
to—basically, to send him home?”  Again, Salem responded in the
affirmative, stating, “We don’t need any translator.  If this guy is not
translate [sic], I’m ready to be on the stand and everything.”

The
trial continued.[3] 
Jawhar Asi took the stand and was examined by his counsel.  Salem
interrupted Jawhar’s testimony, at which time the trial court asked Salem if he
had an objection to the question being asked.  Salem attempted to dispute
Jawhar’s statements and the trial court stopped him, explaining, “[I]t’s not
appropriate to interrupt the witness to give your version of the facts, except
to state a legal objection to the question that is pending; do you
understand?”  Salem stated that he did.  Asi also presented eleven
exhibits, which he requested be admitted into evidence.  The trial court
asked Salem if he had any objections to the exhibits, and each time Salem said
no.

However,
upon returning from the lunch break, Salem told the trial court,

I need my translator
to be with me, because now I understand that I don’t understand nothing, and
the justice is not concerned with me, because I understand now it’s what’s mean
to objected, injected or injected.  I don’t know what that means. 
Now, I understand.  I means—everything that he says is not true.

 

The
trial court responded,

What I understand
your argument to initially be was not so much a translation issue, but more of
an issue that you’re having a difficult time representing yourself in court
perhaps because you don’t understand what it means to make a legal objection.

 

. . . .

 

So what I’m concerned
that I’m hearing about is it’s a little bit of buyer’s—not necessarily buyer’s
remorse, but it’s a concern that maybe you can’t do as an effective job
representing yourself as what you thought that you could.  But my concern
is, is that this case has been on file since August 7th of 2008, and as I
explained to you in the pretrial, you have every right to represent yourself
pro se . . . .  I told you at that time that I would have to hold you
accountable to the rules of law, to the rules of evidence, to the rules of
procedure.

 

The
trial court then allowed Qaddura to retake the witness stand, where he argued
that, under section 57.002(d), an unlicensed interpreter may be allowed to
translate when there is no licensed interpreter for that language within
seventy-five miles.  See Tex. Gov’t Code Ann. § 57.002(d)(2). 
Salem offered no evidence, through Qaddura’s testimony or otherwise, that there
were no licensed Arabic interpreters within seventy-five miles.

As
stated above, the purpose of a court interpreter is “to interpret court proceedings
for an individual who can hear but who does not comprehend English or
communicate in English.”  Id. § 57.001(5).  Salem
participated in this case for almost a year without the assistance of
counsel.  He attended the pretrial conference and the trial court noted
his ability to fully participate.  Further, the trial court instructed
Salem at the pretrial conference to locate a licensed interpreter for use at
trial, if he determined he had the need for one.

Although
he was not completely fluent, the record reflects that Salem comprehended and
communicated in English.  He stated himself that he understood what was
being said except for a few specific words like “object.”  The evidence at
trial undisputedly proved that Salem performed numerous jobs within the
trucking company, including dispatching drivers, dealing with companies, and
collecting payments for loads.  He also dealt with the Department of
Transportation.  Salem completed credit applications that were entirely in
English.  A review of the record supports the trial court’s conclusion
that Salem’s difficulty was not because he did not understand the English
language but instead because he did not understand legal terminology and
procedure.  Salem chose to represent himself and cannot change that
decision simply because it proved more difficult than he anticipated.  See
Cheng v. Wang, 315 S.W.3d 668, 672 (Tex. App.—Dallas 2010, no pet.) (noting
that pro se litigant’s difficulties with the technicalities of a trial do not
constitute grounds for reversal) (citing Mansfield State Bank v. Cohn,
573 S.W.2d 181, 184–85 (Tex. 1978) (“There cannot be two sets of procedural
rules, one for litigants with counsel and the other for litigants representing
themselves.”)).

We
hold that the trial court did not abuse its discretion by denying Salem’s
request to use an unlicensed interpreter, and we overrule his first issue.

Issue
2:    Attorney’s fees

         
In his second issue, Salem argues that Asi was not entitled to attorney’s
fees.  A party may recover reasonable attorney’s fees, in addition to the
amount of a valid claim and costs, if the claim is for an oral or written
contract.  See Tex. Civ. Prac. & Rem. Code Ann.
§ 38.001(8) (Vernon 2008).  When a prevailing party in a breach of
contract suit seeks attorney’s fees, an award of reasonable fees is mandatory
under section 38.001 if there is proof of the reasonableness of the fees.[4]
 See Atlantic Richfield Co. v. Long Trusts, 860 S.W.2d 439,
449 (Tex. App.—Texarkana 1993, writ denied); Budd v. Gay, 846 S.W.2d
521, 524 (Tex. App.—Houston [14th Dist.] 1993, no writ).

Both
parties stated in their pleadings that Asi and Salem made an oral contract for
a business venture.  Asi pleaded, among other causes of action, that Salem
“willfully and persistently breached material duties arising under the parties’
agreement,” and he sought attorney’s fees.  At trial, Asi presented
evidence of the reasonableness of the fees.  The trial court found that
Asi was entitled to damages and awarded him attorney’s fees.

In a
trial to the court where no findings of fact or conclusions of law are filed,
the trial court=s judgment implies all
findings of fact necessary to support it.  Pharo v. Chambers Cnty.,
922 S.W.2d 945, 948 (Tex. 1996); In re Estate of Rhea, 257 S.W.3d 787,
790 (Tex. App.CFort Worth 2008, no pet.).  When a
reporter=s
record is filed, however, these implied findings are not conclusive, and an
appellant may challenge them by raising both legal and factual sufficiency of
the evidence issues.  BMC Software Belg., N.V. v. Marchand,
83 S.W.3d 789, 795 (Tex. 2002); Estate of Rhea, 257 S.W.3d at 790. 
Salem does not challenge the sufficiency of the evidence of Asi’s breach of
contract claim.  Thus, we must presume that the trial court found in favor
of Asi on his breach of contract claim.  Because Asi prevailed on his
breach of contract claim, he was entitled to attorney’s fees.  Salem’s
second issue is overruled.

Issue
3:    Prejudgment interest

         
In his third issue, Salem challenges the award of prejudgment interest.
 He argues that because Asi did not prevail on his claim for equitable
relief, he is not entitled to prejudgment interest.

When
no statute controls the award of prejudgment interest, the decision to award
such interest is left to the sound discretion of the trial court.  Cavnar
v. Quality Control Parking, Inc., 696 S.W.2d 549, 554 (Tex. 1985), overruled
on other grounds by Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,
962 S.W.2d 507, 533 (Tex.1998); City of Port Isabel v. Shiba, 976
S.W.2d 856, 861 (Tex. App.—Corpus Christi 1998, pet. denied).  Therefore,
the standard of review for the award of prejudgment interest is abuse of
discretion.  See Port Isabel, 976 S.W.2d at 861 (citing Marsh v.
Marsh, 949 S.W.2d 734, 744 (Tex. App.—Houston [14th Dist.] 1997, no writ); European
Crossroads’ Shopping Ctr. Ltd. v. Criswell, 910 S.W.2d 45, 55 (Tex.
App.—Dallas 1995, writ denied)).

         
There is no statute that would allow for prejudgment interest in this case. 
Thus, an award of prejudgment interest in this case must be based in
equity.  Cavnar, 696 S.W.2d at 554.  The principles set out in
Cavnar have been applied to various types of cases, including contract
cases for unascertainable damages.  See Perry Roofing Co. v. Olcott,
744 S.W.2d 929, 930 (Tex. 1988) (noting that the purpose of prejudgment
interest is to encourage settlements and discourage delay and expanding the
types of claims to which Cavnar applies).  Prejudgment interest may
be awarded on equity principles, regardless of whether the cause of action
sounds in equity.  See Rio Grande Land & Cattle Co. v. Light,
758 S.W.2d 747, 748 (Tex. 1988) (awarding prejudgment interest based on equity
in a contract claim).  We hold that there is no evidence in this case that
the trial court acted arbitrarily or unreasonably in awarding prejudgment
interest.  See Port Isabel, 976 S.W.2d at 861.

         
Salem also argues that the trial court erred in calculating when the
prejudgment interest would begin to accrue.  The statute reads in
pertinent part, “[P]rejudgment interest accrues on the amount of a judgment
during the period beginning on the earlier of the 180th day after the date the
defendant receives written notice of a claim or the date the suit is filed and
ending on the day preceding the date judgment is rendered.”  Tex. Fin.
Code Ann. § 304.104 (Vernon 2006).  Salem argues that the statute
means that prejudgment interest begins to accrue 180 days after the defendant
received written notice or 180 days after the suit was filed.  Because the
trial court awarded prejudgment interest from the date suit was filed, he
argues that the trial court erred.  Prejudgment interest begins to accrue
either when the suit is filed or 180 days after written notice, whichever
occurs first.  See Sanchez v. Brownsville Sports Ctr., Inc.,
51 S.W.3d 643, 671 (Tex. App.—Corpus Christi 2001, pet. granted, judgm’t
vacated w.r.m.) (“Under the finance code . . . , prejudgment interest begins to
accrue on the earlier of (1) 180 days after the date a defendant receives a
written notice of a claim or (2) the date suit is filed.”); Seminole
Pipeline Co. v. Broad Leaf Partners, Inc., 979 S.W.2d 730, 757–58 (Tex.
App.—Houston [14th Dist.] 1998, no pet.) (“When there is no notice of claim,
prejudgment interest is calculated from the day the suit was filed, not 180
days after the suit was filed.”).  We overrule Salem’s third issue.

Conclusion

         
Having overruled all of Salem’s issues, we affirm the order of the trial court.

 

 

LEE GABRIEL
JUSTICE

 

PANEL: 
LIVINGSTON, C.J.; McCOY and GABRIEL, JJ.

 

DELIVERED:  May 26,
2011














[1]See Tex. R. App. P. 47.4.





[2]Section 57.002(d) states,

. . . [I]n a county with a population
of 50,000 or more, a court may appoint a spoken language interpreter who is not
a certified or licensed court interpreter if:

(1)   the language necessary in the
proceeding is a language other than Spanish; and

(2)   the court makes a finding that there
is no licensed court interpreter within 75 miles who can interpret in the
language that is necessary in a proceeding.

Tex. Gov’t Code Ann. §
57.002(d).





[3]Salem argues that his lack of fluency
in English is “clearly demonstrated in his Opening Statement, which appears to
be mainly English words cobbled together, but which for all intents and
purposes is ‘gobble-de-gook.’”  A review of his opening statement reveals
that, aside from a few interruptions by the court reporter requesting that he
slow down (which is not an uncommon request, even of native English speakers),
Salem was quite able to communicate in English.  For example, his
recounting of a trip to Minnesota he took to buy trucks for Asi is hardly
nonsense cobbled together:

When we get there and he give me personal check, in
Minnesota, he refuse the check.  He say we need cashier’s check.  We
call Jawhar Asi from Minnesota.  We stayed two days in the Minnesota in
the hotel, me and my brother.  And after two days, he send me the
cashier’s check in FedEx.  We receive the cashier’s check and we give it
to the company and the company will give us the two trucks.





[4]Salem argues that Asi failed to
present a demand as required by civil practice and remedies code section
38.002.  See Tex. Civ. Prac. & Rem. Code Ann. § 38.002 (Vernon
2008).  Presentment must be raised at the trial court to be preserved on
appeal.  See Tex. R. App. P. 33.1(a); Coleman v. Coleman,
No. 01-09-00615-CV, 2010 WL 5187612, at *2 (Tex. App.—Houston [1st Dist.] Dec.
23, 2010, no pet.) (mem. op.) (holding failure to raise section 38.002
presentment at the trial court waived issue on appeal); Dumler v. Quality
Work by Davidson, No. 14-06-00536-CV, 2008 WL 89961, at *6 (Tex.
App.-Houston [14th Dist.] Jan. 10, 2008, no pet.) (mem. op.) (same).
 Salem failed to raise presentment at the trial court and failed to
preserve error on this issue.